Kenneth WOOD, Appellant,

v.

STATE of Alaska, Appellee.

No. A–821.

Court of Appeals of Alaska.

May 1, 1987.

Sen K. Tan, Asst. Public Defender and Dana Fabe, Public Defender, Anchorage, for appellant.

John A. Scukanec, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Kenneth Wood was convicted of two counts of sexual assault in the first degree, an unclassified felony. AS 11.41.410. He appeals his conviction and sentence. The state confesses error with respect to the sentence, conceding that Wood's sexual assaults were part of a continuous course of conduct, warranting a single sentence. *See, e.g., Oswald v. State,* 715 P.2d 276, 280 (Alaska App.1986). We affirm Wood's conviction but accept the state's concession of error and remand for amendment of the judgment to reflect only one conviction.

Wood was convicted of sexually assaulting M.G. His defense was consent. It was undisputed that Wood and M.G. had been close friends for approximately six months before the alleged incident, which occurred on April 11, 1984. Wood described their relationship as sexual and testified that they had intercourse as often as ten to twelve times during the month of January. He conceded that the relationship was cooling in March, stating that they only had sexual relations on two or three occasions. In contrast, M.G. described the relationship as platonic. She conceded that on one occasion, while the two were intoxicated, they engaged in kissing and petting. However, she denied that they had ever engaged in sexual intercourse prior to the incident that led to the charges in the present case.

As to the incident in this case, M.G. testified that she had been visiting a friend's house when Wood entered. Wood wanted to speak with her about their relationship. A short while later, M.G. agreed to accompany Wood to a local convenience store for cigarettes. After leaving the store, Wood became insistent about discussing his relationship with M.G. and appeared to be increasingly upset. He refused to take M.G. back to her friend's apartment. When M.G. tried to get out of Wood's car, he grabbed her hair, pulled her back in, and repeatedly slammed her head against the dash-board. Wood then took out a gun and threatened M.G. He drove her to her apartment and, after repeating his threats, he sexually assaulted her. As soon as Wood left the apartment, M.G. reported the incident to her boyfriend and to the police. M.G.'s account was corroborated by a physician's testimony concerning her appearance and injuries.

Wood's testimony conflicted sharply with M.G.'s. For his part, Wood claimed that it was M.G. who had become upset when they went to the store for cigarettes. According to Wood, he and M.G. had argued. M.G. became hysterical and suddenly attempted to jump from the car when it was traveling at a high rate of speed. Wood pulled her back in, slapped her twice in an attempt to calm her, and drove to M.G.'s apartment. Eventually, M.G. calmed down and reconciled her differences with Wood. The couple then went into the apartment, where they engaged in consensual intercourse.

Prior to trial, the state, relying on Alaska's rape-shield statute, AS 12.45.045, and on Alaska Rules of Evidence 403 and 404, moved for a protective order to prevent Wood from introducing evidence that M.G. had posed for Penthouse Magazine and that she had acted in x-rated movies. At an evidentiary hearing on the motion,

Wood testified that, in October of 1983, M.G. first told him that she had posed for Penthouse. Wood had known M.G. for approximately three or four weeks at the time. In December of 1983, M.G. showed him the issue of Penthouse that contained her nude photographs. In Wood's view, M.G.'s demeanor while showing him the magazine was suggestive, and the pictures seemed to excite her. Wood also testified that M.G. told him she had acted in several x-rated movies. In addition, Wood testified that M.G. told him she had "made love with a guy three times—two or three times a day for $75 a time, in a room of mirrors so that people could take pictures." According to Wood, approximately one week later, M.G. approached him and said she wanted to have intercourse with him.

Wood testified that his knowledge of M.G.'s activities led him to consider her promiscuous, however, it did not affect their relationship. Wood asserted that his sexual relationship with M.G. continued into March of 1984, until about a month before the alleged assault.

After considering Wood's testimony, Superior Court Judge J. Justin Ripley granted the state's motion for a protective order. Judge Ripley reasoned that M.G.'s posing for Penthouse and acting in pornographic movies was irrelevant. He recognized that M.G.'s conduct in showing provocative pictures to Wood might be relevant under certain circumstances, but concluded that, in this case, its probative value was outweighed by the invasion of M.G.'s privacy and by the prejudice it might cause to the state's case. See A.R.E. 404(a). In Judge Ripley's view, Wood, by his own admission, did not allow M.G.'s prior conduct to affect

his relationship with her. Nor did he claim that the prior conduct had any influence on his conclusion that M.G. had consented to sexual intercourse during the particular incident that gave rise to the prosecution. Judge Ripley based this conclusion on Wood's testimony that his actions on April 11 were part and parcel of a continuous sexual relationship with M.G. dating from December; it was on this relationship and not on prior conduct that Wood relied in forming his belief that M.G. had given her consent. In excluding the challenged evidence, Judge Ripley expressed particular concern that some members of the jury might be so prejudiced against M.G. for her prior activities that they would refuse to extend to her the protection of the law. In Judge Ripley's view, introduction of the evidence could divert the jury's attention from the relationship between M.G. and Wood to M.G.'s general character, in violation of the rape-shield statute and A.R.E. 404(a).

█ Having reviewed the record, we conclude that Judge Ripley did not abuse his discretion in excluding this evidence. The primary purpose for which the evidence was offered was to show that, in the months prior to the alleged assault, Wood and M.G. had been involved in a relationship that was sexual, rather than merely platonic. The excluded evidence could have added little on this issue except by implying that M.G. was likely to have formed a sexual relationship with Wood because she was, by character, a promiscuous woman. Yet it is precisely this inference that is targeted as impermissible by Alaska's rape-shield statute and by Alaska Rule of Evidence 404(a)(2).[1] Wood would certainly

---

1. A.R.E. 404 provides, in relevant part:

(a) *Character evidence generally.* Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(2) *Character of victim.* Evidence of a relevant trait of character of a victim of crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evi-

dence that the victim was the first aggressor, subject to the following procedure:

    .        .        .        .        .

(ii) The court shall conduct a hearing outside the presence of the jury in order to determine whether the probative value of the evidence is outweighed by the danger of unfair prejudice, confusion of the issues, or unwarranted invasion of the privacy of the victim. The hearing may be conducted *in camera* where there is a danger of unwarranted invasion of the privacy of the victim.

    .        .        .        .        .

have been precluded from relying on this impermissible inference to establish directly that M.G. had consented to intercourse on the night of the alleged assault. There is no reason why he should not have been similarly precluded from relying on it on the subsidiary and tangential issue of his ongoing relationship with M.G.

In only one narrow aspect can the excluded evidence be viewed as something other than generalized proof of promiscuous character. It is arguable that M.G.'s willingness to discuss her past sexual conduct with Wood—as opposed to the fact that she had actually engaged in the past conduct—might be probative of her willingness to form a sexual relationship with Wood. However, this relatively obscure theory of relevance, although focused on in the dissent, is not even mentioned by Wood.

■ Wood offers only two theories of relevance. The first is that his knowledge of M.G.'s past conduct may have influenced his judgment as to M.G.'s consent during the alleged assault. This theory, however, is foreclosed by Wood's specific testimony that his relationship with M.G. was not influenced by his knowledge of her prior conduct. At any rate, the record makes it clear that this was simply not a case of crossed signals. The jury was faced with a clear choice between conflicting versions of the incident. If it accepted Wood's account, there was plainly consent; if it accepted M.G.'s, there plainly was not.

Wood's second theory of relevance is more germane: it is that M.G.'s past conduct tends to corroborate his testimony that their relationship was sexual. In advancing this theory, however, Wood does not focus on the significance of the fact that M.G. was willing to discuss her past conduct with him. Rather, he relies only on the significance of the prior conduct itself. In other words, Wood's argument is precisely and exclusively that M.G.'s past promiscuity is relevant to show that she

was probably more willing to form a sexual relationship rather than a platonic relationship with him. As argued in the appellant's brief: "What M.G. had done in the past is certainly a reflection of her attitude towards sex."

■ As we have already pointed out, the inference of specific conduct from such a generalized showing of past promiscuity is exactly the type of inference precluded by Alaska law. Our conclusion in this regard is strongly supported by *Kvasnikoff v. State*, 674 P.2d 302 (Alaska App.1983), where we held similar evidence of past promiscuity to be irrelevant and inadmissible.

■ Even assuming Wood had specifically relied on the relevance of M.G.'s willingness to talk to him about her past sexual conduct rather than on the relevance of the past conduct itself, his argument would not be persuasive. This narrow theory of relevance is attenuated, at best. Under this theory, the excluded evidence would have been relevant only to corroborate Wood's testimony concerning the nature of his ongoing relationship with M.G. This is an issue which, though perhaps not technically collateral, was certainly subsidiary to the central issues in the case. Wood was never precluded or restricted from presenting other, more direct evidence corroborating his characterization of the relationship. He was, in fact, able to produce a significant amount of evidence to support his own testimony in this regard. On balance, it is apparent that the realistic impact of the excluded evidence, had it been admitted, could only have been to impress the jury with the fact that the complaining witness was a person of questionable morals and character. We conclude that exclusion of this evidence was justified under A.R.E. 404.

■ Wood next argues that the prosecutor incorrectly instructed the grand jury on the elements of sexual assault—specifi-

---

(iv) In prosecutions for the crime of sexual assault in any degree and attempt to commit sexual assault in any degree, evidence of the victim's conduct occurring more than one year

before the date of the offense charged is presumed to be inadmissible under this rule, in the absence of a persuasive showing to the contrary.

cally, on the legal definition of consent. The record bears out Wood's contention. His failure to move to dismiss the indictment prior to trial is, however, fatal to this claim. *Anthony v. State,* 521 P.2d 486, 496 (Alaska 1974); *Gaona v. State,* 630 P.2d 534, 537 (Alaska App.1981). In any event, given M.G.'s testimony that Wood literally beat her into submission, it is unlikely that the grand jury would have refused to return an indictment even if it had been properly instructed that Wood's reckless disregard of M.G.'s lack of consent was an element of the offense. *See Clifton v. State,* 728 P.2d 649 (Alaska App.1986).

▪ Wood also argues that the trial court erred in permitting the state to violate a protective order regarding Wood's prior criminal history. Our review of the record establishes that Wood thoroughly exposed his criminal record to the jury on direct examination so that the state's action may have been appropriate. Even if the state committed error in cross-examining Wood, the error was harmless beyond reasonable doubt because any inadmissible evidence was cumulative of other similar evidence admitted without objection during Wood's cross-examination.

▪ Wood argues, finally, that the trial court erred in admitting testimony that one of his defense witnesses had been incarcerated with Wood on unrelated drug charges and in allowing that witness to be cross-examined about unrelated crimes. The state concedes error but contends that, in context, the error was harmless beyond reasonable doubt. We accept the state's concession of error. *Dunbar v. State,* 677 P.2d 1275 (Alaska App.1984). Given the trial court's strong curative instruction and the cumulative nature of most of the witness' testimony, we are satisfied that this error was harmless. *See McBeth v. State,* 652 P.2d 120, 124–25 (Alaska App.1982). We are particularly impressed by the fact that the defense offered the witness' testimony to establish circumstantially that

Wood and M.G. were lovers prior to the alleged sexual assault; the witness testified, however, that he believed M.G. and Wood were having a sexual relationship in October and early November. Wood's own testimony conflicted with his account; Wood testified that he and M.G. had sexual relations for the first time on December 6, 1983. Thus, most of the observations related by the witness appear to have been contradicted by Wood, himself, in his direct testimony. The erroneous cross-examination of the witness could not have appreciably harmed Wood's case.[2]

The judgment of the superior court is AFFIRMED in part and this case is REMANDED for resentencing. The court is directed, on remand, to impose a single sentence for Wood's conviction of first-degree sexual assault.

SINGLETON, Judge, dissenting.

I agree with the court's resolution of most of the issues in this case. I am satisfied, however, that if Wood requested an opportunity to cross-examine M.G. regarding her showing him nude photographs of herself (published in a national magazine), and disclosing to him that she had acted in pornographic movies and "live" sexual performances, then the trial court abused its admittedly great discretion in precluding such cross-examination. *See, e.g., Garner v. State,* 711 P.2d 1191, 1197 (Alaska App.1986) (Singleton, J., concurring and dissenting) (recognizing deference appellate courts should give to trial courts' broad discretion). The difficult question for me is whether Wood ever specifically requested such an opportunity.

The majority is apparently convinced that Wood was only interested in offering extrinsic evidence of M.G.'s professional background in order to suggest that she was the kind of woman who readily consented, indeed pursued, sexual relations with passing acquaintances. If this were the offer of proof, I agree that the trial court was within its discretion in rejecting

**2.** It is significant that Wood had already testified when this witness was called. Wood admitted that he had a criminal record and was a fugitive from justice. Consequently, cross-examination of the witness about being in jail with Wood did not have the effect of disclosing to the jury for the first time the fact that Wood was incarcerated.

it. *See* A.R.E. 404. I also agree with the trial court and the majority that the fact that M.G. engaged in this conduct, standing alone, is of limited significance and, but for her disclosure to Wood, could properly have been excluded. Wood was, however, entitled to cross-examine M.G. regarding her relationship with him, in order to show that the relationship was sexual, not platonic.

While the trial court is correct that Wood and his witnesses described an ongoing sexual relationship and that Wood predicated his understanding of M.G.'s behavior on that relationship, it must be remembered that M.G. denied any sexual involvement with Wood whatsoever.[1] In her testimony their prior relationship was purely platonic. She testified that she had made it clear to him that under no circumstances did she wish to have sexual relations with him. In contrast, Wood testified that she, not he, instigated a sexual relationship and that she did so within a week of her having, in a provocative way, broached the subject of her prior "modeling" experiences. Apparently, she not only mentioned having starred in pornographic movies but, if Wood is to be believed, described to him in graphic detail the nature of her performances.

Given M.G.'s testimony, that she had absolutely no sexual interest in Wood whatso-

ever, I believe he was denied his constitutional right to confront her when he was prevented from cross-examining her regarding the conversations in question. Let me stress that I am not suggesting that counsel should have been permitted to cross-examine M.G. about the circumstances surrounding her acting and modeling, or the feelings that those activities generated in her. *A fortiori*, I am not suggesting that Wood should have been permitted to introduce extrinsic evidence regarding M.G.'s prior activities. The trial court could well have precluded extrinsic evidence and restricted cross-examination to the conversation between M.G. and Wood. Failure to permit that limited cross-examination, in my view, denied Wood a fair trial.[2]

While the issue is close, I do not believe that Wood abandoned the right to cross-examine M.G. by concentrating on seeking court permission to offer extrinsic evidence. *See Richey v. State*, 717 P.2d 407, 411–13 (Alaska App.1986) (Singleton, J., dissenting) (criticizing a finding of waiver of cross-examination under similar circumstances).

---

1. Had M.G. conceded a past sexual relationship, but contended that she had broken up with Wood, I would agree that the evidence was properly rejected. Let me stress that I am not suggesting that a prior sexual relationship would excuse Wood's beating an unwilling former lover into submission. My point is that while Wood admitted striking M.G., he stated that they had intercourse at a later time under circumstances in which he could reasonably believe that she was not acquiescing out of fear.

   A jury might find this testimony more believable if they thought, as Wood testified, that he and M.G. had a prior sexual relationship in which arguments, albeit never violent ones, were frequently settled in bed. Conversely, if the jury believed M.G. that she had never willingly had sexual relations with Wood, a jury might find her injuries conclusive proof that she did not consent to sexual relations on April 11.

2. Henry Bain testified as a witness on Wood's behalf at the hearing on the state's motion for a protective order. Bain said that he furnished M.G. accomodations, at Wood's request, when she was having difficulty with her boyfriend.

Bain indicated that M.G. brought up her acting and modeling career and showed him provocative pictures. He also testified that she initiated sexual contact with him. However, it is not clear that the two events, *i.e.*, showing the pictures and suggesting sex, occurred at the same time. If they did, the jury might infer that M.G. used these activities as a prelude to, or ploy in aid of, seduction. This inference would strengthen Wood's testimony that their relationship was sexual.

The trial court and the majority place great emphasis on what they take to be Wood's concession that M.G.'s sexual activities did not influence Wood's perceptions of M.G. I believe this statement is taken out of context. Wood testified that he was in love with M.G. and in this sense her past behavior did not influence his opinion of her, *i.e.*, make him like her less. Wood never suggested that her actions did not lead him to believe that she was interested in him sexually; the whole tenor of his testimony indicates otherwise.