**Kenneth W. WOOD, Petitioner–Appellant,**

v.

**STATE OF ALASKA, Respondent–Appellee.**

**No. 90–35826.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 20, 1991.

Decided Feb. 28, 1992.

Nancy Shaw, Asst. Federal Public Defender, Anchorage, Alaska, for petitioner-appellant.

John A. Scukanec, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, Alaska, for respondent-appellee.

Before TANG, REINHARDT and RYMER, Circuit Judges.

RYMER, Circuit Judge:

Kenneth Wood was convicted in Alaska state court of raping an adult woman, M.G. In a pre-trial hearing, the trial court issued a protective order excluding any evidence that M.G. had posed for *Penthouse* magazine and acted in X-rated movies and other sexual performances, and that she had shown Wood the *Penthouse* photographs and discussed her experiences with him. Wood appealed his conviction unsuccessfully in the Alaska state courts, arguing among other things that the exclusion of this evidence violated his Sixth Amendment rights. He then filed this petition for writ of habeas corpus in the district court on the same ground. The district court denied the petition, and Wood appeals.

We hold that excluding the evidence did not violate Wood's Sixth Amendment rights. The facts proffered, that M.G. posed for *Penthouse* and acted in pornographic movies and other sexual performances, are not relevant in themselves. We recognize that the facts that she showed Wood the *Penthouse* photographs and told him about her acting experiences are relevant to a limited degree because they are acts with the defendant that tend to establish the nature of their relationship. We conclude, however, that the trial court did not err in excluding evidence of M.G.'s modeling and acting, as well as evidence of her communicating those experiences to Wood, because the court could reasonably conclude that the prejudicial effect of the evidence outweighs its limited probative value. We therefore affirm.

## I

Wood and M.G. met in October 1983. At the time, M.G. was living with her boyfriend, Bob Berube, and Wood was their neighbor. Wood and M.G. became friends, seeing each other frequently over the next six months.

Wood and M.G. dispute the nature of their relationship during those six months. Wood testified that they had a sexual relationship and had intercourse regularly, even though M.G. was still somewhat involved with Berube. He also said that a common occurrence for them was to have an argument and then, after resolving the argument, have sex. He presented several witnesses who testified to their perceptions that Wood and M.G. had a sexual relationship. M.G. testified that, to the contrary, their relationship was platonic. She said that they did not have intercourse, although she did admit that one night when they were both drunk, they did engage in kissing and petting. She also testified that she had an off-and-on relationship with Berube, but that she slept with Berube almost every night even during the times that they were separated. She confided in Wood about some of the problems she and Berube were having.

On April 11, 1984, M.G. was visiting at a friend's house when Wood showed up and wanted to talk to her about their relationship. M.G. did not want to talk to him about it. Wood testified that their sexual relationship had slowed down by that time because M.G. was confused about her feelings toward him and toward Berube. M.G. explained in her testimony that she had been trying to drop Wood out of her life because he wanted more than a platonic relationship and she did not. Wood finally persuaded M.G. to leave the friend's house and go with him to get cigarettes.

While they were in the car, Wood persisted in trying to talk about the relationship, and they began to argue. M.G. asked that he drive her home, and when he refused she tried to jump out of the moving car. Wood struck her several times after she tried to get out of the car. Wood testified that he only slapped her to get her to calm down. M.G. testified that he hit her head against the dashboard, and that he pulled out a gun and threatened to use it on her.

Wood then drove M.G. to another male friend's home where M.G. had been staying. Wood testified that M.G. had calmed down and that they had reconciled their differences at that point. He said that they then went into the friend's apartment and made love and that it was entirely consensual. M.G. testified that he threatened to hurt her if she did not go in the apartment and that he again pulled out the gun. She agreed to go in with him, and he put the gun back under the seat of the car. She testified that he told her to go into the bedroom and take off her clothes and that he would have sex with her "either willingly or forcefully." Once in the bedroom, she said he told her to lie down and be still and he would not hurt her. She complied, and they had intercourse and oral sex. Afterward, Wood left the apartment and M.G. called Berube and reported the incident to the police.

Before trial, the state moved for a protective order under Alaska's rape shield statute to prevent Wood from introducing evidence of M.G.'s prior sexual conduct. Alaska Stat. § 12.45.045(a) requires the

court to determine, in an *in camera* hearing, the admissibility of evidence of previous sexual conduct:

> If the court finds that evidence offered by the defendant regarding the sexual conduct of the complaining witness is relevant, and that the probative value of the evidence offered is not outweighed by the probability that its admission will create undue prejudice, confusion of the issues, or unwarranted invasion of the privacy of the complaining witness, the court shall make an order stating what evidence may be introduced and the nature of the questions that may be permitted. The defendant may then offer evidence under the order of the court.

At the pre-trial hearing on the motion, Wood testified that several months before the alleged rape, M.G. told him that she had posed for *Penthouse,* acted in pornographic movies, and had been paid to have sex in a room full of mirrors with people taking pictures. He had a copy of the *Penthouse* magazine, and the state conceded that it was M.G. in the photographs, but he did not have copies of any films. Wood testified that M.G. showed him the *Penthouse* photographs, and he testified that he perceived that "in some respects it seemed to be sexual come-on" but that it was not "totally" a come-on. At some time after that, he said, M.G. approached him directly and said she wanted to have sex with him. He testified that about a week after that, they did have intercourse for the first time.

Wood's counsel argued that the evidence of these sexual acts and the fact that M.G. had presented them to Wood was relevant to show that the two had a sexual relationship. After hearing testimony of Wood's witnesses and considering the government's proffer of M.G.'s testimony, the trial court ruled that the evidence would be excluded. It explained:

> The defendant himself here placed only the most tenuous contact I think between the photographs and the consent issue. If he indeed sincerely believed that she was promiscuous and rather loose, he certainly had his own independent fund

of information to conclude that. Perhaps it might be the relative ease with which he and she formed a sexual liaison. Perhaps it's something as yet unspecified in this record that they talked about and what he suspected. That's never been stated as to, you know, what her contact—or conduct with others might have been, and I think that it adds almost nothing to establishing the consent issue, whereas even in today's modern times as the state correctly argues, it's very—it is possible that some people even in today's modern times would have such a negative view of such a person that they would revert to what was the time-honored position which would virtually deny a person with this in her background the protection of the rape law. A bad social result and one that society has clearly gone beyond.

The trial court concluded: "So no use will be made of these exhibits [the *Penthouse* photographs]. They will not be introduced. They will not be referred to and both sides will be required to scrupulously instruct their witnesses that these issues are not to be inquired into." It also prevented the introduction of any evidence relating to M.G.'s pornographic acting.

Wood was found guilty at trial of two counts of sexual assault in the first degree. He appealed his conviction to the Alaska Court of Appeals. Among other grounds, he argued that the exclusion of the evidence of M.G.'s past sexual conduct violated his Sixth Amendment rights to confront the witnesses against him and to present a defense. The Court of Appeals affirmed the conviction in a 2–1 decision. *Wood v. State,* 736 P.2d 363 (Alaska Ct.App.1987). It concluded that the trial court did not abuse its discretion in excluding the evidence because it had limited probative value, and whatever value it had was outweighed by its probable prejudicial effect. In dissent, Judge Singleton opined that Wood should have been permitted to examine M.G. regarding the possibility that she informed the defendant of her "modeling" experience. *Id.* at 367–68 (Singleton, J., dissenting). Wood then appealed to the Alaska Supreme Court. The Supreme

Court initially granted review but after receiving formal briefing, vacated its order granting review. Two of the five justices dissented from the denial of review and would have reversed the conviction.

Wood then filed this petition for writ of habeas corpus in the district court under 28 U.S.C. § 2254, again arguing that the trial court's exclusion of the evidence violated his Sixth Amendment rights. The district court denied the petition. It reasoned that Wood did not have a constitutional right to present the evidence based on the record in the pre-trial hearing. It went on to state that he did have such a constitutional right after M.G. testified because the evidence was then relevant to impeach her testimony. The district court denied the petition, however, because Wood made no effort to introduce the evidence after M.G. testified, and his argument therefore related only to the constitutionally sound decision made at the pre-trial hearing to exclude the evidence.

Wood appeals, arguing that he was not obligated to renew his objection to the exclusion of the evidence after M.G. testified. He also argues that this court should accept the district court's conclusion that the exclusion of the evidence violated his Sixth Amendment rights. The state argues that the district court correctly concluded that Wood could not raise an argument based on the relevance of the evidence after M.G. testified because he never presented that argument to the state courts. It also argues that, even if Wood's failure to object did not preclude relief, the exclusion of the evidence was not unconstitutional either before or after M.G. testified.

## II

■ The district court held that the trial court's decision to exclude the evidence of M.G.'s posing in *Penthouse* and acting in pornographic movies was constitutionally sound at the time it was made, at the pre-trial hearing, because the trial court did not have the factual basis for deciding the issue differently. The district court went on to note, however, that had the issue been presented after M.G. testified at trial, the

trial court would have been constitutionally required to permit introduction of the evidence because it had a factual basis at that time. Because Wood only made his objection to the exclusion of the evidence in the pre-trial hearing and not after M.G. testified, the district court concluded that his constitutional rights were not violated. The state similarly argues that Wood failed to exhaust his state remedies because he never presented any argument to the state courts on the distinct issue of the evidence's admissibility after M.G. testified. *Cf. Luce v. United States*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) (review of ruling on in limine motion concerning admissibility of prior conviction not available to criminal defendant if he or she does not testify at trial).

We do not agree that Wood needed to object again after M.G. testified. We cannot see how the issue changed in any way after she testified because she did not introduce any new issue in her testimony that was unknown at the time of the pre-trial hearing. The district court concluded that the evidence "would tend strongly to impeach her testimony that she never had a consensual act of sexual intercourse with Wood at any time." Yet, the state made an offer of proof at the pre-trial hearing that M.G. would testify that she and Wood never had a sexual relationship. Wood argued at the pre-trial hearing that the evidence would make it more probable that they had a sexual, not a platonic, relationship. Whatever relevance the evidence had to that issue was just as apparent at the pre-trial hearing as it was after M.G. testified.

The district court also suggested that the evidence became relevant after M.G. testified because it would impeach the "entire persona" she presented to the jury. But the only "persona" she presented to the jury was that of someone who had not had consensual intercourse with Wood. She did not testify that she was of a particularly chaste character or otherwise add anything to the state's offer of proof. Thus, the trial court was fully informed of the

impact M.G.'s persona might have when it issued its pre-trial ruling.

Finally, the district court suggested that the evidence could be relevant to impeach M.G.'s general credibility as a witness, particularly in light of the words, "I love pretending," in the *Penthouse* article accompanying the photographs. Yet, a witness's credibility is always an issue. The parties and the court knew that M.G. was going to testify, and her general credibility was therefore as much an issue in the pre-trial hearing as it was after she testified.

We also agree with Wood that the district court's decision cannot be justified under the procedural default doctrine. We are not aware of any Alaska rule that would have required Wood to renew his objection after M.G. testified, but even if he did violate a procedural rule in this case, he would not be barred from seeking federal habeas review because the Alaska Court of Appeals did not rely on the procedural default in reaching its decision. *See Wood,* 736 P.2d 363. "Normally, failure to comply with a state's contemporaneous objection rule bars habeas review unless the petitioner can show cause for the failure and actual prejudice flowing from the error. If, however, a state appellate court overlooks the procedural default and considers the objection on the merits, the cause and prejudice requirement does not apply." *Walker v. Endell,* 850 F.2d 470, 473 (9th Cir. 1987) (footnote and citations omitted), *cert. denied,* 488 U.S. 926, 981, 109 S.Ct. 309, 530, 102 L.Ed.2d 328, 562 (1988).

We conclude that it did not make any difference that Wood failed to renew his arguments after M.G. testified. Denying Wood's petition on that ground, therefore, was unjustified.

### III

Because we have concluded that the district court improperly denied Wood's habeas petition on the ground that he failed to renew his objection during the trial, Wood would have us defer to the district court's conclusion that the exclusion of the evidence violated his constitutional rights once M.G. testified. Wood argues that the district court's conclusions about the admissibility of the evidence are factual findings that must be reviewed only for clear error. We do not need to decide whether our review is de novo or for clear error, because we conclude under either standard that the trial court's evidentiary ruling did not violate Wood's constitutional rights.

Wood argues that excluding the evidence of M.G.'s sexual conduct violated his rights under the Sixth Amendment to confront the witnesses against him and to present a defense. These rights encompass the rights to cross-examination, *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974), and to present relevant evidence, *Michigan v. Lucas,* —— U.S. ——, 111 S.Ct. 1743, 1746–47, 114 L.Ed.2d 205, 212 (1991). A defendant has no right, however, to present irrelevant evidence. *United States v. Torres,* 937 F.2d 1469, 1473 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 886, 116 L.Ed.2d 789 (1992). It is within the trial court's discretion to determine which issues are relevant. *See id.*

Even relevant evidence can be excluded in certain circumstances. The right to present relevant testimony "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973). The Supreme Court has recognized that a state has a legitimate interest in protecting rape victims against unwarranted invasions of privacy and harassment regarding their sexual conduct. *Lucas,* —— U.S. at ——, 111 S.Ct. at 1146, 114 L.Ed.2d at 212. Also, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on ... cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986).

In determining whether Wood's Sixth Amendment rights were violated, we make

a two-part inquiry. We inquire, first, as to whether the excluded evidence is relevant. If it is not relevant, Wood had no constitutional right to present it. If the evidence is relevant, we ask next whether other legitimate interests outweighed Wood's interest in presenting the evidence. Because trial judges have broad discretion both to determine relevance and to determine whether prejudicial effect or other concerns outweigh the probative value of the evidence, we will find a Sixth Amendment violation only if we conclude that the trial court abused its discretion. *United States v. Feldman*, 788 F.2d 544, 554 (9th Cir.1986), *cert. denied*, 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987); *see also Torres*, 937 F.2d at 1471–73 (finding no Sixth Amendment violation when district court had not abused its discretion in excluding evidence). A trial court does not abuse its discretion so long as the jury has "sufficient information" upon which to assess the credibility of witnesses. *United States v. Kennedy*, 714 F.2d 968, 973 (9th Cir. 1983), *cert. denied*, 465 U.S. 1034, 104 S.Ct. 1305, 79 L.Ed.2d 704 (1984); *see also Van Arsdall*, 475 U.S. at 680, 106 S.Ct. at 1436 ("We think that a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination ... 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.' ") (quoting *Davis*, 415 U.S. at 318, 94 S.Ct. at 1111).

### A

■ Wood argues that the evidence of M.G.'s prior sexual conduct is relevant to show that she had a sexual relationship with Wood, which in turn is relevant to show that she consented to sex on April 11, 1984. The state does not dispute that the issue of whether M.G. had a sexual relationship with Wood prior to the alleged rape is relevant to whether she consented on that night. The state does dispute, however, that the evidence of M.G.'s modeling in *Penthouse* and acting in pornographic movies is relevant to establish that she had a sexual relationship with Wood or that she

had consensual intercourse with him on the night in question.

Wood contends that the evidence is directly relevant to show that M.G. would have had a sexual relationship with him because it shows that she is a woman of questionable sexual morals. Other courts that have considered this theory of admissibility have consistently rejected it as reflecting outdated views of women and sexuality, and we similarly reject it. *See, e.g., United States v. Kasto*, 584 F.2d 268, 271–72 (8th Cir.1978), *cert. denied*, 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979); *Kvasnikoff v. State*, 674 P.2d 302, 306 (Alaska Ct.App.1983). The fact that M.G. was willing to pose for *Penthouse* or act in sexual movies and performances says virtually nothing about whether she would have sex with Wood. It only tends to show that she was willing to have sex, not that she was willing to have sex with this particular man at this particular time. Whether M.G. was willing to have sex at all is not an issue in the case because she admitted that she slept with Berube, and she in no way represented that she was averse to having sex. Because the evidence of M.G.'s prior sexual acts with others does not establish anything that was not already established, it lacks probative value on the question of whether she had a sexual relationship with Wood.

■ Wood's next argument is that the evidence is relevant to impeach M.G.'s general credibility as a witness. Yet, the fact that she posed in the nude or acted in pornographic performances does not in any way indicate that she is a dishonest person or had a motive to lie in this case.

Wood emphasizes, as did the district court, that the article accompanying the *Penthouse* photographs indicates that she is not credible because it quotes her as saying, "I love pretending." But the quote simply comes from a discussion of her ambition to be an actress: "[M.G.]'s 'purpose' [in life] is to put her considerable talents, youthful good looks, and other blessings to work as an actress. 'I love pretending. ... I have a real instinct for the stage.' "

That M.G. wants to be an actress has little relevance to whether she was lying on the stand. Moreover, to the extent that her acting ambition does have any relevance to her credibility as a witness, it was not necessary to introduce the *Penthouse* evidence to establish it. Nothing in the combination of the words and the pictures indicates that M.G. is prone to rape fantasies or otherwise especially likely to lie about being raped. Wood could simply have inquired into her love of pretending without referring to the *Penthouse* article.

Thus, evidence of M.G.'s modeling and acting is not relevant in itself to establish either that she and Wood had a sexual relationship or that she is an unreliable witness. That M.G. told Wood about it and showed him sexually explicit photographs of herself, on the other hand, is relevant. Wood testified at the pre-trial hearing that M.G. showed him the *Penthouse* pictures and discussed her acting and modeling with him. These communications could be interpreted as sexually provocative acts. That M.G. may have communicated in these ways with Wood therefore has some tendency to show that she was not uninterested in a sexual relationship with him, and in turn that the relationship was, as Wood claimed, sexual rather than platonic.

■ A rape victim's communications and acts with the defendant are fundamentally different from prior sexual conduct with persons other than the defendant. While a rape victim's sexual history with others only goes to show a generalized attitude toward sex that says little if anything about the victim's attitude toward sex with the defendant, the victim's prior acts *with the defendant* can shed considerable light on her attitude toward having sex with him. For this reason, rape shield laws often have specific exceptions for evidence of prior sexual conduct with the defendant, *see, e.g.*, Fed.R.Evid. 412(b), and the Supreme Court has also indicated that prior sexual conduct with the defendant is relevant to the issue of consent, *see Lucas*, —— U.S. at ——, ——, 111 S.Ct. at 1746–47, 114 L.Ed. at 212, 213. Whether or not M.G.'s communications with Wood are considered

"sexual conduct," their sexual nature certainly has some bearing on whether she in fact chose to have a sexual relationship with him.

Of course, even if M.G. did have a sexual relationship with Wood, she did not necessarily consent to sex on April 11, 1984. But evidence need not be dispositive to be relevant, and Wood need not demonstrate that the outcome in his case would have been different had the evidence been introduced in order to establish a Sixth Amendment violation. *See Van Arsdall*, 475 U.S. at 679–80, 106 S.Ct. at 1435. Whether or not Wood and M.G. had a previous sexual relationship is clearly relevant to the ultimate question of consent because it helps establish Wood's defense that they had consensual intercourse that night after a fight as they had in the past. It would also serve to impeach M.G.'s testimony that they had a purely platonic relationship. If the jury disbelieved her on that point, it might also disbelieve her on the question of whether she consented on the night of the alleged rape. Thus, the proposition that they had a sexual relationship is material, and to the extent the evidence of M.G.'s display of nude photographs to Wood and discussions with him about her pornographic acting makes that proposition more likely, it is relevant.

In sum, the evidence of M.G.'s modeling and acting experiences is irrelevant in itself. That she may have talked about them with Wood and shared her photographs with him is relevant, however, because it tends to make more probable Wood's story that they had a sexual relationship.

### B

■ Even though the evidence is relevant, it may properly be excluded if its probative value is outweighed by other legitimate interests. The Supreme Court has held that certain legitimate interests can justify excluding evidence of a prior sexual relationship between a rape victim and a criminal defendant. *Lucas*, —— U.S. at ——, ——, 111 S.Ct. at 1747–48, 114 L.Ed.2d at 213–14. The *Lucas* Court stated that the rape shield statute in question

(requiring notice of an intention to present evidence of past sexual conduct) "represents a valid legislative determination that rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy." —— U.S. at ——, 111 S.Ct. at 1746, 114 L.Ed.2d at 212. These considerations are in addition to the more traditional considerations about prejudice and confusion of the issues that trial courts may always balance against probative value in deciding whether to admit or exclude evidence. *See id.*

■ Wood argues that the interest in protecting rape victims' privacy does not apply here. He points out that the sexual acts in question were not private at all. M.G. posed in a nationally circulated magazine, and she allegedly acted in movies distributed to the public and permitted herself to be photographed by strangers while having sex.

We agree. This case is different from the typical case in which the intimate details of a rape victim's private life would be subject to scrutiny. The purpose of M.G.'s prior sexual acts was to be publicly observed. The state cannot claim M.G. has a privacy interest in acts that were fully intended to be public. *Cf. Douglass v. Hustler Magazine, Inc.,* 769 F.2d 1128 (7th Cir.1985) (nude model appearing in *Playboy* is public figure), *cert. denied,* 475 U.S. 1094, 106 S.Ct. 1489, 89 L.Ed.2d 892 (1986).

Concluding that the interest in M.G.'s privacy is not present here does not end our inquiry, however, because other legitimate interests are implicated as well. The state points out that another purpose of the rape shield statute is to encourage reporting by limiting embarrassing trial inquiry into past sexual conduct. In the traditional case, the rape victim has two incentives not to report: to avoid harassing questions, and to avoid making public acts that were intended to be private. Here, because M.G.'s acts were never intended to be private, only the first incentive applies. *Cf. id.* at 1144 (explaining that emotional injury in having already public pictures presented in different magazine was not that great).

■ This limited interest in encouraging reporting would not in itself outweigh Wood's interest in presenting relevant evidence. In *Davis,* 415 U.S. 308, 94 S.Ct. 1105, the Court held that the state's interest in keeping a witness's juvenile record private did not outweigh the defendant's interest in introducing evidence of the record to show the witness's bias. The Court concluded that "[w]hatever temporary embarrassment might result to [the witness] or his family by disclosure of his juvenile record ... is outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial ... witness." *Id.* at 319, 94 S.Ct. at 1112. Similarly, in this case, we conclude that the embarrassment to M.G. of having her modeling and acting experiences revealed would be so minor in light of the public nature of the acts that it cannot overcome Wood's right to present relevant evidence.

But, unlike *Davis,* the interests in this case go beyond that of protecting the witness. Of significantly more import are the concerns, intrinsic to the truth-finding process itself, that introducing the evidence would confuse the issues and unduly prejudice the jury. Introducing evidence of M.G.'s discussions with Wood would necessarily also introduce evidence of several previous incidents of sex with others, as well as evidence of exhibitionism. Because M.G.'s acting and modeling experiences are not themselves relevant, the jury could be led to base its decision on irrelevant facts.

Moreover, if the jury considers these facts, it could feel hostility for her as an immoral woman, and it could base its decision on that hostility rather than on the actual facts of the case. The proffered evidence in this case is particularly prejudicial because it indicates not only that M.G. had extramarital sex, but also that she posed nude and had sex both for money and for the purpose of making pornography. Because many people consider prostitution and pornography to be particularly offensive, there is a significant possibility that jurors would be influenced by their impression of M.G. as an immoral woman. They could also conclude, contrary to the

rape law, that a woman with her sexual past cannot be raped, or that she somehow deserved to be raped after engaging in these sexual activities. In light of these considerations, we conclude that the risk of confusion and prejudice is substantial.

On the other side of the balance, while evidence that M.G. showed Wood sexually provocative pictures of herself and told him about her sexual experiences is probative to some extent of the nature of their relationship, its value is far from substantial. It is not inconsistent with M.G.'s story that she discussed her sexual experiences with Wood; purely platonic friends may discuss their sexual experiences. Showing sexually provocative nude photographs to a platonic friend may be more unusual, but in this case it might only indicate that M.G. wanted to show off her modeling experience. Wood testified at the pre-trial hearing that M.G. seemed proud of the fact that she had posed for *Penthouse.* Other witnesses testified that she had offered to show them the pictures as well, once in Wood's presence, and one of the witnesses testified that she actually showed him the pictures. This testimony reduces the probative value of M.G.'s showing sexually provocative pictures to Wood because it indicates that M.G. may not have been interested in Wood in particular. Wood was also equivocal about whether her showing him the pictures was a sexual come-on. He answered first that he interpreted it that way, but when asked again whether he thought it was a come-on, he said, "Slightly, I wouldn't say totally, no."

The evidence also diminishes in probative value when viewed in the context of the entire case. Wood was permitted to present direct evidence that he and M.G. had a sexual relationship. To that end, he testified himself that they had sex, and presented witnesses who testified that M.G. and Wood kissed and hugged and put their arms around each other, that they went into Wood's bedroom often and they once came out of the bedroom partially undressed, that they once slept together in a double-sized sleeping bag, and that M.G. described their relationship as "fucking or fighting." Wood was also able to inquire

into other aspects of their relationship that would indicate that they had a close relationship, such as that they spent time together and that M.G. confided in him about problems between her and Berube.

The evidence would be more probative if it were the only evidence Wood could present to establish a prior sexual relationship such that he would be effectively precluded from presenting his whole theory to the jury. For example, in *Van Arsdall,* the Court emphasized that "the trial court prohibited *all* inquiry into the possibility that [the witness] would be biased as a result of the State's dismissal of his pending [criminal] charge." 475 U.S. at 679, 106 S.Ct. at 1435. Similarly, in *Davis,* the Court explained that excluding evidence of the juvenile record essentially foreclosed any opportunity to advance a bias theory: "While counsel was permitted to ask [the witness] *whether* he was biased, counsel was unable to make a record from which to argue *why* [he] was biased...." 415 U.S. at 318, 94 S.Ct. at 1111; *see also Bright v. Shimoda,* 819 F.2d 227, 229 (9th Cir.1987) ("When substantial cross-examination has taken place, courts are less inclined to find confrontation clause violations."), *cert. denied,* 485 U.S. 970, 108 S.Ct. 1246, 99 L.Ed.2d 444 (1988). Here, nothing prevented Wood from presenting his theory that he and M.G. had a prior sexual relationship, and in fact he presented considerable evidence that would directly establish that fact.

The evidence that M.G. discussed her sexual experiences and showed him nude pictures is simply one more indication that they had a sexual relationship; it does not add any significantly new dimension to the overall story presented. Unlike in *Davis,* where the evidence would have explained why the witness might be lying, M.G.'s actions with Wood do not explain anything. She would not have been any more likely to want a sexual relationship with Wood *because* of what she showed and told; at most, these acts would reflect that M.G. had already developed a sexual interest in Wood. Moreover, that she showed the pictures and told Wood about her past does

not establish any motive for M.G. to lie about being raped. All evidence relevant to that point—her relationship with Berube, for example—was admitted. Thus, the proffered evidence is not as critical as in cases where the excluded evidence would establish the bias of a crucial prosecution witness and thereby forcefully undermine the credibility of the witness and the strength of the state's entire case. *See, e.g., Olden v. Kentucky,* 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988) (finding Sixth Amendment violation when trial court excluded evidence of rape victim's relationship with another man because rape victim was crucial prosecution witness and evidence would have explained why she had motive to lie about being raped).

Because the evidence that M.G. showed Wood her *Penthouse* photographs and discussed her pornographic acting experiences with him is not highly probative and the risk of confusion and prejudice is substantial, we conclude that the trial court acted within its discretion when it excluded the evidence. The trial court carefully weighed the probative value of the evidence against its prejudicial effect. While the trial court could reasonably have ruled differently, we cannot say that it was "beyond reason" to conclude that the prejudicial effect of the evidence outweighed its usefulness. *See Olden,* 488 U.S. at 232, 109 S.Ct. at 483.

We recognize that the trial court could have issued a narrower ruling that would have permitted some inquiry into M.G.'s actions with Wood while limiting inquiry into the specifics of her prior sexual acts, thereby limiting their prejudicial effect. But Wood did not ask for such a narrow ruling; he argued, and still argues, only that he should be able to introduce all of the evidence of M.G.'s modeling and acting for all purposes. Because the evidence of M.G.'s actions with Wood is not critical to Wood's defense, we cannot say that the trial court abused its discretion by not *sua sponte* fashioning a particularized ruling to allow that evidence to be introduced.

Wood has not stated a violation of his Sixth Amendment rights to present relevant evidence or to confront the witnesses against him, and his petition for a writ of habeas corpus was therefore properly denied.

AFFIRMED.