HENRY, Circuit Judge,
concurring in the result.
I concur in the result reached in the majority decision and write separately only to note that I would apply a different test in analyzing the exclusion of the proffered testimony in this case. My analysis, however, leads me to the same result as the majority.
As recognized by the majority, the central question in this case is whether the exclusion of petitioner’s evidence violated his Sixth Amendment right to compulsory process and Fourteenth Amendment right to due process. In analyzing whether these constitutional rights were violated by the exclusion of Mrs. Richmond’s testimony regarding the victim’s condoms and male visitor, the majority creates a two-part, outcome-oriented test derived largely from United States v. Valenzuela-Bernal, 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982). The majority’s inquiry asks (1) whether the evidence was relevant, and if so, whether the state’s interests in excluding it outweighed the defendant’s interests, and (2) whether the evidence was constitutionally material — that is, whether the proffered testimony would have “exculpated the defendant” or “would have created a reasonable doubt that did not exist without the evidence.” See Op. at 20.
In contrast to the majority’s approach, I would apply a more traditional relevaney/state interests balancing test, combined with a harmless error appellate review to determine whether the exclusion of the proffered testimony violated Mr. Richmond’s compulsory process and due process rights. This balancing test would require us to inquire whether the excluded testimony is relevant and material to the defense, and if the testimony is relevant and material, whether legitimate state interests substantially outweigh the defendant’s interest in presenting the testimony. See Wood v. Alaska, 957 F.2d 1544, 1549-50 (9th Cir.1992) (adopting this balancing test to analyze the exclusion of defendant’s evidence in a rape case). If, based on the foregoing test, we find that a constitutional violation has occurred, then we would determine on appeal whether the trial court’s exclusion of the testimony constituted harmless error.
I believe this balancing test/harmless error review is consistent with the Supreme Court’s approach for analyzing a defendant’s rights to present the testimony of his own witnesses, see Rock v. Arkansas, 483 U.S. 44, 55-56, 107 S.Ct. 2704, 2711-12, 97 L.Ed.2d 37 (1987), and to cross-examine prosecution witnesses, see Delaware v. Van Arsdall, 475 U.S. 673, 678-82, 106 S.Ct. 1431, 1434-36, 89 *877 L.Ed.2d 674 (1986) — both of which focus on the testimony of the “particular witness, not on the outcome of the entire trial.” Id. at 680, 106 S.Ct. at 1435.
On the other hand, the majority’s outcome-oriented test resembles the Court’s approach for analyzing the rights to interview a witness whom the government has deported, see Valenzuela-Bernal, 458 U.S. at 872-74, 102 S.Ct. at 3449-50, to receive effective assistance of counsel, see Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984), and to obtain exculpatory evidence from the prosecution, see United States v. Bagley, 473 U.S. 667, 681-83, 105 S.Ct. 3375, 3383-84, 87 L.Ed.2d 481 (1985); see also, Tom Stacy & Kim Dayton, Rethinking Harmless Constitutional Error, 88 Colum. L.Rev. 79, 120 (1988) (“[The Court’s reasoning in Delaware v. Van Arsdall ] implies that courts should eschew reliance on a strict outcome-oriented prejudice test whenever a defendant asserts a right based on the confrontation clause or the compulsory process clause, which also speaks of “witnesses.’ ”).
The distinction between these two tests is that the majority’s creates a much higher “materiality” threshold when the defendant seeks to introduce testimony on direct examination — a test which it presumably would not apply when the defendant seeks to cross-examine a prosecution witness. I, on the other hand, would apply this more stringent test only in those cases in which a more significant governmental interest is at stake, for example, the Executive Branch’s constitutional responsibility to execute Congress’s immigration policy which was at issue in Valenzuela-Bemal. See 458 U.S. at 872-73, 102 S.Ct. at 3449-50.
As the Supreme Court explained in Crane v. Kentucky, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986), regardless of “[wjhether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants ‘a meaningful opportunity to present a complete defense.’ ” Id. at 690, 106 S.Ct. at 2146 (quoting California v. Trombetta, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984)). This right to present a defense encompasses a defendant’s right to call witnesses whose testimony is “relevant and material to the defense.” See Washington v. Texas, 388 U.S. 14, 23, 87 S.Ct. 1920, 1925, 18 L.Ed.2d 1019 (1967). The Court has provided that “the right to present relevant testimony ... ‘may, iii appropriate cases, bow to accommodate other legitimate interest in the criminal trial process.’ ” Rock, 483 U.S. at 55, 107 S.Ct. at 2711 (quoting Chambers v. Mississippi, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973)). Within this framework, the Court has recognized that a state has a legitimate interest in protecting rape victims against unwarranted invasions of privacy and harassment regarding their sexual conduct. Michigan v. Lucas, 500 U.S. 145, 149-50, 111 S.Ct. 1743, 1746-47, 114 L.Ed.2d 205 (1991).
Applying this test to the facts of this case, I arrive at the same conclusion as the majority. I find the testimony regarding the condoms and the visiting boy to be both relevant and material, in that it relates to the victim’s sexual activity and attempts to offer an alternative explanation for the prosecution’s strong inference that Mr. Richmond is the only individual responsible for the victim’s physical injury. However, like the majority, I would conclude that the probative value of this testimony is outweighed by the state’s interest in excluding evidence which poses a danger of unfair prejudice and confusion of the issues and in protecting rape victims from invasions of privacy and sexual stereotyping. The state’s interests here are heightened by the defendant’s failure to meet the notice requirements of the statute, see Lucas, 500 U.S. at 153, 111 S.Ct. at 1748 (“Failure to comply with [the notice] requirement may in some cases justify even the severe sanction of preclusion.”), and to elicit testimony on cross-examination as is thoroughly explained by the majority.
Therefore, though I perhaps see the case as closer than does the majority, I would also reverse the district court’s grant of Mr. Richmond’s habeas corpus petition. The district court, having more facts at its fingertips, was right about the relevancy and materiality of the evidence. My disagreement with the district court comes in its evaluation and weighing of the competing interests.
Though I reach the same result as the majority, I think the difference in our ap *878 proaches could be very significant in other cases. The majority’s “constitutional materiality” prong unduly interferes with the defendant’s right to present a defense by failing to focus on the particular witness, and in effect, calling upon the district court — which at that time has not heard all of the evidence — to conduct a “harmless error” review at trial. Admittedly, my approach might tend to let more evidence in; but the standard of relevance under the Federal Rules of Evidence “is a liberal one.” Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 587, 113 S.Ct. 2786, 2793-94, 125 L.Ed.2d 469 (1993). Wide latitude on cross-examination and limiting instructions are also available to the district court to later minimize the impact of this evidence.
Finally, I would also note that even if we assumed the state’s interests here were not paramount, on appeal I would apply harmless error, much as the majority does in its “constitutional materiality” test, to reverse the district court’s grant of the writ.