747 P.2d 768

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Thomas H. DANSON, Defendant–Appellant.**

**No. 16642.**

Court of Appeals of Idaho.

Dec. 14, 1987.

William J. Douglas, Deputy Public Defender, Post Falls, for defendant-appellant.

Jim Jones, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Thomas Danson was found guilty by a jury, in the magistrate division, of using a telephone to annoy, intimidate and harass another person in violation of I.C. § 18–6710.[1] A magistrate entered a judgment of conviction and sentenced Danson to 120 days in the county jail, with 80 days suspended. On appeal, the district court affirmed. Danson appeals from the district court decision, presenting five issues for our consideration: first, whether the magistrate erred by not excluding the principal complainant from the courtroom prior to that witness's testimony; second, whether Danson was denied a fair trial by that witness's attempts to inflame the jury; third, whether the prosecuting attorney contributed to the alleged inflammatory conduct; fourth, in light of the complaining witness's position as a magistrate judge, whether that witness's testimony regarding probable cause deprived Danson of a fair trial; and, fifth, whether the jury's verdict was supported by the evidence. We affirm.

The underlying facts may be summarized as follows. Danson retained Gene Marano, then a Coeur d'Alene attorney, as counsel in a number of matters. When Danson failed to pay a bill owed to Marano, Marano sued and obtained a default judgment. On the morning of May 11, 1984, three individuals accompanied by a police officer visited Danson's residence and executed upon the judgment by impounding a pick-up truck owned by Danson. Danson questioned their authority, but did not obstruct execution of the judgment.

Throughout the succeeding hours a number of phone calls were received at Marano's law office and at his home. During many of the calls the caller did not speak. Other calls included profane and, arguably, threatening statements. Marano contacted the police and subsequently filed a complaint. Danson was charged with violating I.C. § 18–6710. He denied having placed the phone calls. A jury found Danson guilty.

I

When Danson's trial commenced, Danson moved for exclusion of the witnesses pursuant to I.R.E. 615. The motion was granted. Although not clearly established by the record, apparently Marano was present in the courtroom prior to presenting his testimony. Danson asserts that the magistrate committed prejudicial error by

---

1. Idaho Code § 18–6710 provides:

   Every person who, with intent to annoy, terrify, threaten, intimidate, harass or offend, telephones another and (a) addresses to or about such person any obscene, lewd or profane language, or makes any request, suggestion or proposal which is obscene, lewd, lascivious or indecent; or (b) addresses to such other person any threat to inflict injury or physical harm to the person or property of the person addressed or any member of his family, or any other person; or (c) by repeated anonymous or identified telephone calls whether or not conversation ensues, disturbs the peace or attempts to disturb the peace, quiet, or right of privacy of any person at the place where the telephone call or calls are received, is guilty of a misdemeanor and upon conviction thereof, shall be sentenced to a term of not to exceed one (1) year in the county jail. Upon a second or subsequent conviction, the defendant shall be guilty of a felony and shall be sentenced to a term of not to exceed five (5) years in the state penitentiary.

   The use of obscene, lewd or profane language or the making of a threat or obscene proposal, or the making of repeated anonymous telephone calls as set forth in this section may be prima facie evidence of intent to annoy, terrify, threaten, intimidate, harass or offend.

permitting Marano to remain in the courtroom in violation of the exclusion order.

In *State v. Ralls,* 111 Idaho 485, 725 P.2d 190 (Ct.App.1986), we had occasion to examine Rule 615. There, we noted that exclusion is one means to reduce the possibility of a witness shaping his testimony to conform with or to rebut the prior testimony of others. The question whether to grant a motion to exclude witnesses is committed to the sound discretion of the trial judge. *Id.* Since granting or denying the request for exclusion is discretionary, it follows that permitting exceptions to or variations from an exclusion order also lies within the trial court's discretion, as does the nature of any sanction imposed for violation of the order. *State v. Christensen,* 100 Idaho 631, 603 P.2d 586 (1979). *But see* I.R.E. 615(a) and *State v. Ralls, supra* (regarding particular witnesses not subject to exclusion). Four methods of enforcing an exclusion order have been used by the courts: (1) citing the witness for contempt, (2) permitting comment on the witness's noncompliance in order to reflect on his credibility, (3) refusing to let the witness testify, and (4) striking the witness's testimony. 3 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 615[03] (1982).

Here, the only indication in the record that Marano was present during the testimony of others is his response upon being asked to identify Danson. Marano responded: "Mr. Danson is present, where he's been pointed out before." The record contains no suggestion that Danson had objected to Marano's presence or that the magistrate had excepted Marano from the exclusion order.

As has so often been stated, error will not be presumed on appeal. In the absence of a showing of prejudice, a trial court's permitting a witness for the prosecution to testify after being present in the courtroom contrary to an exclusion order will not be deemed an abuse of discretion. *State v. Oldham,* 92 Idaho 124, 438 P.2d 275 (1968). Even under the federal rule, where exclusion of witnesses is mandatory upon a request, a violation of the rule does not lead to an automatic reversal. *United States v. Warren,* 578 F.2d 1058 (5th Cir.1978), *on rehearing,* 612 F.2d 887 (en banc), *cert denied* 446 U.S. 956, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980). *Compare State v. Roberts,* 126 Ariz. 92, 612 P.2d 1055, 1057 (1980) ("[F]ailure to honor an exclusionary request is presumed prejudicial unless the absence of prejudice is clearly manifest from the record.")

As set forth in *Oldham,* the burden of proving error is on the appellant. *See, e.g., State v. Lopez,* 100 Idaho 99, 593 P.2d 1003 (1979). Here, Marano's testimony was preceded by that of two secretaries, who had received many of the phone calls, and by two of the gentlemen who had seized Danson's pickup under the writ of execution. Danson suggests that Marano's testimony mirrored that of prior witnesses and that Marano's facial and body expressions could be observed by the jury while those witnesses were testifying.

The appellant, Danson, has not indicated specifically how Marano's testimony may have been tainted by Marano's exposure in the courtroom to these earlier witnesses. The preponderance of Marano's testimony related to matters not overlapping or addressed by the previous witnesses. The record includes no indication that Danson objected to Marano's presence. Had Danson raised an objection, the trial court might have ruled that Marano was exempt from the order as "a person whose presence is shown by a party to be essential to the presentation of his cause." *See* I.R.E. 615(a). Given the lack of a showing of prejudice, and Danson's failure to seek any corrective measure from the trial judge, we hold that the trial court did not err by failing *sua sponte* to apply the exclusion order upon Marano.

## II

We turn next to Danson's challenges to the content of Marano's testimony. He contends that Marano offered inappropriate testimony which inflamed the jury; that the prosecuting attorney "assisted" in the presentation of this testimony; and that—in light of Marano's position as a

magistrate judge while testifying—a comment by Marano regarding probable cause was unfairly prejudicial. We begin by examining the allegedly inflammatory testimony.

### A

■ On direct examination, and in response to a question regarding his state of mind after receiving a threatening phone call which Marano believed to have come from Danson, Marano testified:

> Ah, I was a ... I was ... frightened is, I guess, is not a word that I use that often, I was a little bit scared because I had known Tom [Danson] to carry a gun. He'd been in my office, with a gun on, in the past. Ah, I also know from the social security disability matter, in talking to his physician, that he was a bit unstable.

Danson's objection to this testimony was sustained. Marano later characterized the phone calls as "threats." Danson's objection to the repeated use of the term "threat" was also sustained. Marano also recounted that once Marano's family became involved he "felt that it was time to get him [Danson] off the street." Danson also points to testimony wherein Marano described the impact of those phone calls upon his family, expressed the opinion that these phone calls were made by Danson, and volunteered hearsay regarding the similar conclusions of others.

Although sustaining Danson's objections to much of this testimony, the magistrate declined Danson's request to admonish the witness. Danson did not follow up the objections with motions to strike the testimony or for a mistrial, or with a request for specific instructions to the jury. Danson contends that the cumulative impact of Marano's testimony was to inflame the jury and deny him a fair trial. He refers us to cases applying the common-law rule of evidence before adoption of I.R.E. 403. *See, e.g., State v. Marlar,* 94 Idaho 803, 498 P.2d 1276 (1972); *State v. Wilson,* 93 Idaho 194, 457 P.2d 433 (1969). That rule, like I.R.E. 403, called for a balancing between the danger of unfair prejudice and the probative value of the offered evidence.

An accumulation of errors may require a reversal. *State v. Campbell,* 104 Idaho 705, 662 P.2d 1149 (Ct.App.1983). However, in this instance, the appellant has not pointed to any particular evidentiary ruling as being erroneous. Instead, Danson's argument centers upon the witness's allegedly argumentative, prosecutorial attitude and the trial court's failure to admonish the witness.

The decision whether to admonish a witness lies within the trial court's discretion and flows from his role as manager of the trial. *See* I.R.E. 611. The magistrate responded to Danson's admonishment request by stating: "Well, I think that a ... I think that you can protect your record by making appropriate objections at the appropriate time. We'll just leave it at that." Danson points to no additional objectionable statements by the witness after this ruling. We hold that the magistrate's responses were within his discretion. From our review of the record we are unable to say that Danson did not receive a fair trial.

### B

■ Danson contends that the prosecuting attorney acted improperly by encouraging these inadmissible and prejudicial statements by Marano. In doing so, Danson asserts, the prosecutor failed in his duty to ensure that the defendant receive a fair trial.

A prosecutor has a duty to see that justice is done and that every criminal defendant is accorded a fair trial. *State v. Couch,* 103 Idaho 205, 646 P.2d 447 (Ct. App.1982). The prosecutor is expected and required to be fair; he has a duty to avoid misrepresentation of the facts and unnecessarily inflammatory tactics. *State v. Griffiths,* 101 Idaho 163, 610 P.2d 522 (1980). If prejudicial comments are admitted because of prosecutorial misconduct, the inquiry on appeal is whether the appellate court is convinced beyond a reasonable doubt that the trial's result would have been the same, had the misconduct not occurred. *See State v. LaMere,* 103 Idaho

839, 655 P.2d 46 (1982); *State v. Baruth,* 107 Idaho 651, 691 P.2d 1266 (Ct.App.1984). *But see State v. Tupis,* 112 Idaho 767, 735 P.2d 1078 (Ct.App.1987) (Burnett, J., specially concurring.)

Our examination of the instant, admittedly cold and dry, record reveals no particularly egregious conduct by the prosecutor. Aside from one exchange to be addressed in Part IIC of this opinion, the questions (which Danson now asserts were intended to elicit prejudicial testimony) related to reactions of others to certain phone calls. These included questions regarding the reaction of a police officer, Marano's wife, and Marano's son. Although the trial judge sustained the majority of Danson's hearsay and relevancy objections, this area of inquiry arguably was probative regarding the harassing and intimidating nature of the calls. Our examination of the record does not reveal particularly egregious or unreasonable conduct by the prosecutor. In each instance, once the court issued a clear ruling the prosecuting attorney pursued a new line of questioning. The prosecuting attorney might have better anticipated the court's rulings. However, each offer of evidence was a close call. A prosecutor is not guilty of misconduct simply because he offers evidence to which objections are sustained.

Moreover, we note that—at the beginning of the trial and before any evidence was presented—the jury had been instructed that attorneys' statements were not evidence and that any evidence to which an objection might be sustained was to be ignored. We conclude that the prosecutor's interrogation of the witnesses was not contrary to his duty to ensure a fair trial. We hold that no reversible error, or accumulation of errors, occurred. *See, e.g., State v. Campbell,* 104 Idaho 705, 662 P.2d 1149 (Ct.App.1983).

### C

Danson asserts that one testimonial statement by Marano was particularly prejudicial and unfair. In response to the question: "You thought they [the calls] were going to stop?", Marano testified:

Well, I hoped they were going to stop, 1.) and 2.) there wasn't enough there, in my opinion, for probable cause. But, by the time, Goodsell identified him, the calls went to my home, all those ... and the threats made to the Dalys towards me and so forth; put it altogether and there's more than enough for probable cause.

This response was offered to explain why Marano had decided to file a complaint with the police. Danson did not object to this testimony. However, Danson now contends that this testimony, in combination with the jury's knowledge that the witness was now a magistrate, deprived Danson of a fair trial.

Prior to trial Danson requested that Marano, who by then was a magistrate in the same jurisdiction, not display his robes or other accoutrements of his office in front of the jury. The state acceded to this request. Because evidence of the good character of a complaining witness is generally not admissible, *see* I.R.E. 404(a)(2), when other witnesses offhandedly referred to Marano's present judicial position and good character, Danson successfully objected. However, when Marano took the stand Danson did not object to Marano stating his present occupation.

Danson refers to the holding of *Commonwealth v. Connolly,* 217 Pa.Super. 201, 269 A.2d 390 (1970). In *Connolly* the state sought to impeach the testimony of the defendant. The state called another judge to the stand to identify the defendant as the individual who had previously pled guilty to robbery. The defense offered to stipulate to the identity issue. Nevertheless, the state was permitted to present the judge as a witness for identification purposes. Upon being asked to identify the defendant, the witness apparently volunteered a series of comments regarding the post-trial "atmosphere" of that "trial." On appeal, the Pennsylvania superior court held that any prejudicial significance of this "extraneous testimony" was "multiplied by the speaker being a jurist of such magnitude." *Id.* 269 A.2d at 393. The court concluded:

The evidence complained of was of significant impact because there was a witness unneeded for identification, who injected collateral issues, which were more likely to cause prejudice because the witness was such an influential person. In such a close case, where all the above factors coalesced, appellant was unduly prejudiced and should be granted a new trial.

*Id.* 269 A.2d at 393.

The propriety of jurists appearing as witnesses has received some attention over the years. *See generally* REPORT OF SPECIAL COMMITTEE ON THE PROPRIETY OF JUDGES APPEARING AS WITNESSES, 36 *A.B.A. Journal* 630 (1950); Annotation, *Judge as Witness in Cause Not on Trial Before Him,* 86 A.L.R.3d 633 (1978). Of course, a judge who is the alleged victim of a crime may testify. *See* IDAHO CODE OF JUDICIAL CONDUCT Canon 2 (1987). But Danson argues that, as in *Connolly,* the witness' respected position exaggerated the impact of unfair testimony. However, we are not persuaded that the testimony here was unfair.

Marano's testimony regarding probable cause was given on cross-examination. Defense counsel's question related to the possibility that Marano had not considered alternative sources of the phone calls. Marano apparently continued this train of thought in explaining why he chose to act against Danson at a particular point in time. The trial court did not permit Marano to explain more specifically how he reached the conclusion that the probable cause standard had been met.

On the day of the alleged offense, Marano was a practicing attorney familiar with criminal law. Marano's testimony that he considered the probable cause standard in reaching his decision to file a complaint was reasonable in light of Marano's prior legal experience. The testimony was offered to explain the witness' action and was initiated by the defendant's counsel. It was *not* offered as an expert opinion regarding probable cause. We find nothing unfair about this evidence.

Although we decline to say that Marano's later appointment as a magistrate did not have any weight with the jury, we have been presented with nothing to show the jury was unduly influenced by it. Marano's status was not exploited or given special prominence. It came to light in the ordinary course of presenting the witness and eliciting his testimony. Danson apparently had the misfortune of choosing to harass an individual who later became an effective witness against him. This may have been prejudicial to Danson's interests at trial, but it was not unfairly so. No error has been shown.

### III

Finally, we are asked to determine whether the verdict is supported by substantial evidence. Danson contends that the evidence produced at trial did not prove beyond a reasonable doubt that he was the party making the harassing phone calls. Our review of the evidence leads us to a contrary conclusion.

It is undisputed that Danson's vehicle was removed from his residence on the morning of May 11 and that Danson was aware that Marano was responsible for this act. One of the individuals who removed this truck testified that Danson expressed a vengeful attitude toward Marano, both when the vehicle was being removed and when Danson retrieved it later that day. Marano testified that when he returned a call from Danson's wife that same morning, Danson joined into the conversation and attempted to negotiate. When Marano refused, Danson allegedly stated: "If you think phone calls are bad, you wait 'til you see ... you wait to see what I do now. I'll hunt your f——ing a— down." (Profanity deleted.) Prior threats by the accused may be relevant to illustrate the attitude of the accused toward the prosecuting witness at the time of an assault. *State v. Marlar, supra.* The state thereby sought to establish Danson's mental state on the day in question.

A number of witnesses testified regarding anonymous calls they received on May 11. Two of Marano's former secretaries, whom the complaint also mentioned as victims, described a series of phone calls during which the calling party did not speak, but during which the secretaries heard

traffic noise in the background. They testified that these calls occasionally tied up all of the firm's lines. Marano and the secretaries testified that similar silent calls had been received at the firm only once before—on the day when the small claims action, preceding the judgment and execution, was served upon Danson. Marano's wife and daughter each described phone calls received at their home on May 11 in which the caller used profane language. However, they were unable to identify the caller.

The most damaging testimony came from the two witnesses who testified as to the identity of the caller. Keith Goodsell, an investigative officer with the Coeur d'Alene Police Department, testified that he was directed to Marano's office on the afternoon of May 11. Goodsell stated that within a minute after his arrival the phone rang and a secretary directed him to pick up the extension. According to Goodsell, the caller said simply, "You bull f——ers." (Profanity deleted.) Goodsell immediately identified the caller as Danson. He based this identification both upon his familiarity with Danson's voice and his knowledge that Danson occasionally used the same unusual profane phrase. Goodsell denied having any reason to suspect that Danson would be the caller prior to picking up the extension line and hearing this statement. He averred that neither the dispatcher or anyone at Marano's office mentioned Danson's name prior to his listening to the phone call.

In addition to Goodsell's account, the state offered Marano's testimony that a call received by him at his home about midnight that night came from Danson. Marano described listening to a muffled statement including the word "die." Based upon his familiarity with Danson's voice, he identified the caller as Danson.

In rebuttal, Danson presented testimony from individuals in his presence on May 11 who testified that Danson had made no such phone calls. This testimony accounted for nearly all of Danson's activity that day, most of which pertained to his attempts to obtain sufficient funds to retrieve his truck. However, the testimony of these witnesses regarding the timing of events was occasionally inconsistent with that of other witnesses. In addition, aside from family members, most of these witnesses were not able to account for Danson's activities when the caller-identified phone calls were received.

In regard to adequately identifying the party placing a call, for purposes of introducing the import of the caller's conversation into evidence against him, the most usual if not the most reliable mode of identification is the recognition of the caller's voice by the witness receiving the call (the party called) who intends to relate the conversation. *State v. Marlar, supra; State v. Fenley,* 103 Idaho 199, 646 P.2d 441 (Ct.App.1982). We see no reason why this same means of identification should not be sufficient to identify the accused as the caller for purposes of I.C. § 18-6710.

The credibility of witnesses, including those whose testimony is contradicted, is a matter for the trier of fact. Here, the state offered two witnesses who identified Danson as the originator of two arguably intimidating, harassing, or offensive phone calls. Danson did not contest the sufficiency of the witnesses' familiarity with his voice or manner of speech. Based upon this evidence, if the jury concluded that at least two calls were originated by Danson, the jury reasonably could infer that Danson was also the source of the other abusive phone calls received at Marano's home and office that same day. In any event, Danson was only charged with and convicted of one count of misusing a telephone. In addition to the two identification witnesses, the state offered a panoply of circumstantial evidence linking Danson to the alleged crime. We conclude that substantial and competent evidence was presented to support the jury's verdict.

The order of the district court on appeal, upholding the judgment of conviction, is affirmed.

BURNETT and SWANSTROM, JJ., concur.