839 P.2d 1223

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Danny PEITE, Defendant–Appellant.**

No. 18942.

Court of Appeals of Idaho.

Aug. 27, 1992.

Petition for Review Denied Oct. 28, 1992.

Evans, Keane, Koontz, Boyd, Simko & Ripley, Kellogg, for defendant-appellant. John O. Cossel, argued.

Larry EchoHawk, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen., Boise, for plaintiff-respondent. Michael A. Henderson, argued.

**WALTERS, Chief Judge.**

Danny Peite appeals from a judgment convicting him of rape. We affirm.

## I. FACTS

At about 7:00 on the evening of January 26, 1990, "CW," the complaining witness in this case, arrived at the Longhorn Bar in Osburn, Idaho. She had been drinking earlier that day, first at her home and then at the Midway bar. When the bartender at the Longhorn refused to serve her any more, CW joined three men at one of the tables and began sipping from their drinks. Danny Peite later entered the bar and joined them. The men eventually asked to have CW removed from their table, and Peite agreed to drive her home. According to CW, Peite refused to stop at the trailer where she lived and drove further up the road to Terror Gulch. When he stopped the car, Peite threatened to kill her and her children, and then beat and raped her in the back seat of his automobile. CW claimed she escaped from Peite's car and made her way to the interstate and later was picked up by a passing motorist. CW recognized the motorist as Harold Cornell, an acquaintance, and told him she had been raped and that the man who did it threatened to kill her and her children. She insisted that Cornell take her directly to her home.

The next day CW reported to the police that she had been raped. Peite was subsequently charged with rape and tried before a jury. Peite denied he had raped CW and gave a contradictory account of the events that occurred after they left the Longhorn. He admitted he drove to Terror Gulch and had intercourse with CW in the back seat of his car. However, he contended the act was consensual and that he never struck her. He explained that CW complained of the cold and invited him to her home to continue their relationship. When he declined, CW refused to tell him where she lived. Peite maintained that he dropped her off at the side of the road, in the location where he believed she lived, be-

cause he wanted to meet up with his friends.

Evidently believing CW's version over Peite's, the jury returned a verdict finding Peite guilty of rape. Seeking to overturn the conviction, Peite moved for a judgment of acquittal and, alternatively, for a new trial. The trial court denied both motions and entered a judgment convicting Peite of rape.

## II. ISSUES

On appeal Peite challenges various evidentiary rulings, asserting that the court erred in (1) excluding evidence of CW's sexual behavior in violation of Peite's constitutional right to confront witnesses against him; (2) applying the "excited utterance" exception to admit CW's hearsay statements; (3) allowing evidence of CW's identification of Peite in a photographic lineup; (4) admitting photographs depicting bruises on CW's body, taken of CW after the incident; (5) admitting a shirt purportedly worn by CW on the night of the incident; and (6) failing to properly control the state's presentation of evidence at trial.

Peite also contends that his conviction should be overturned as a result of prosecutorial misconduct occurring at trial. He accuses the prosecutor of asking inflammatory and clearly objectionable questions of two witnesses and alleges numerous instances of misconduct in the state's closing arguments, including an improper reference to excluded evidence, serious misstatements of the law and evidence, and a disparaging comment allegedly directed at defense counsel. Peite additionally seeks reversal under the cumulative error doctrine.

Finally, Peite argues that the evidence was insufficient to support his conviction. We address these issues in turn.

## III. EVIDENTIARY RULINGS AND COURTROOM PROCEDURE

A. Exclusion of evidence of prior sexual behavior.

Prior to trial, Peite filed a motion, accompanied by a written offer of proof, seeking permission to introduce evidence of CW's past sexual behavior. Peite proffered the testimony of a bartender at the Metals bar that CW once "had picked up a guy at the bar and had sexual intercourse with him in the ladies bathroom." This witness would further testify that on other occasions, CW had "tried to pick up guys for sex in bars." Peite also offered to call the owner of the Midway bar, who would testify that early in the day of the alleged rape, while drinking at the Midway, CW invited a man to go home with her to have sex. This witness would also testify that on eight to ten occasions over the past couple of years, she had observed CW make sexual advances toward men and leave the bar to have sex, and that CW was always the instigator of those sexual overtures.

Following a hearing on the motion, the district court ruled that the proffered evidence was not relevant to the issue of consent—the only element of the offense in dispute—and, concluding that Peite had not shown the admission of the evidence to be constitutionally required, excluded it. Peite acknowledges such evidence is generally inadmissible under the exclusionary provisions of I.R.E. 412,[1] and he concedes

---

1. Idaho Rule of Evidence 412 provides, in relevant part,

 (a) Notwithstanding any other provision of law, in a criminal case in which a person is accused of a sex crime, reputation or opinion evidence of the past sexual behavior of an alleged victim of such sex crime is not admissible.

 (b) Notwithstanding any other provision of law, in a criminal case in which a person is accused of a sex crime, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is—

 (1) admitted in accordance with subdivisions (c)(1) and (c)(2) and is constitutionally required to be admitted; or

 (2) admitted in accordance with subdivision (c) and is evidence of—

 (A) past sexual behavior with persons other than the accused, offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen or injury; or

 (B) past sexual behavior with the accused and is offered by the accused upon the issue of whether the alleged victim consented to the

that the exceptions enumerated in subsection (b)(2) of the Rule do not apply in his case. He maintains, however, the evidence was constitutionally required to be admitted through I.R.E. 412(b)(1).

■ Peite asserts that the exclusion of the proffered evidence violated his rights under the Sixth Amendment to confront the witnesses against him and to present a defense. Sixth Amendment rights encompass the rights to cross-examination and to present a defense. *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974); *Michigan v. Lucas,* —— U.S. ——, ——–——, 111 S.Ct. 1743, 1746–47, 114 L.Ed.2d 205 (1991). A defendant has no right, however, to present irrelevant evidence. *United States v. Torres,* 937 F.2d 1469, 1473 (9th Cir.1991), *cert. denied* —— U.S. ——, 112 S.Ct. 886, 116 L.Ed.2d 789 (1992). Even if relevant, evidence can be excluded in certain circumstances.

The right to present relevant testimony "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973). The Supreme Court has recognized that a state has a legitimate interest in protecting rape victims against unwarranted invasions of privacy and harassment regarding their sexual conduct. *Lucas,* —— U.S. at ——, 111 S.Ct. at 1746, 114 L.Ed.2d at 212. Also, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on ... cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). *Wood v. State of Alaska,* 957 F.2d 1544, 1549 (9th Cir.1992).

■ Thus, in determining whether Peite's Sixth Amendment rights were violated, we conduct a two-part inquiry. First, we consider whether the evidence proffered is relevant; unless relevant, Peite had no constitutional right to present it. If we conclude that the evidence is relevant, we then ask whether other legitimate interests outweighed Peite's interest in presenting the evidence. We recognize that trial judges have broad discretion to determine whether prejudicial effect or oth-

sexual behavior with respect to which the sex crime is alleged; or
 (C) false allegations of sex crimes made at an earlier time; or
 (D) sexual behavior with parties other than the accused which occurred at the time of the event giving rise to the sex crime charged.
(c)(1) If the person accused of committing a sex crime intends to offer under subdivision (b) evidence of specific instances of the alleged victim's past sexual behavior, the accused shall make a written motion to offer such evidence not later than five days before the date on which the trial in which such evidence is to be offered is scheduled to begin, except that the court may allow the motion to be made at a later date, including during trial, if the court determines either that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence or that the issue to which such evidence relates has newly arisen in the case. Any motion made under this paragraph shall be served on all other parties.
 (2) The motion described in paragraph (1) shall be accompanied by a written offer of proof. If the court determines that the offer of proof contains evidence described in subdivision (b), the court shall order a hearing in chambers to determine if such evidence is admissible. At such hearing the parties may call witnesses, including the alleged victim, and offer relevant evidence. Notwithstanding subdivision (b) of Rule 104, if the relevancy of the evidence which the accused seeks to offer in the trial depends upon the fulfillment of a condition of fact, the court, at the hearing in chambers or at a subsequent hearing in chambers scheduled for such purpose, shall accept evidence on the issue of whether such condition of fact is fulfilled and shall determine such issue.
 (3) If the court determines on the basis of the hearing described in paragraph (2) that the evidence which the accused seeks to offer is relevant and that the probative value of such evidence outweighs the danger of unfair prejudice, such evidence shall be admissible in the trial to the extent an order made by the court specifies evidence which may be offered and areas with respect to which the alleged victim may be examined or cross-examined.
(d) For purposes of this rule, the term "past sexual behavior" means sexual behavior other than the sexual behavior with respect to which the sex crime is alleged.

er concerns outweigh the probative value of the evidence. *Wood,* 957 F.2d at 1550. Accordingly, we will find a Sixth Amendment violation only if we conclude that the trial court abused its discretion. *Id.*

■ Peite contends the evidence is relevant because it indicates that CW had, in the past, consented to sexual acts with men she met at bars, and that the jury was entitled to consider such evidence when determining whether she consented to have sex with him on the night of January 26. We observe, however, that a victim's sexual history with others only goes to show a generalized attitude toward sex and says little if anything about her attitude toward a specific act of sex with the defendant. *Wood,* 957 F.2d at 1550; *but see State v. Colbath,* 130 N.H. 316, 540 A.2d 1212, 1217 (1988) ("sexual activities of a complainant *immediately prior to* an alleged rape may well be subject to a defendant's constitutional right to present evidence." (emphasis added)). The issue for the jury to decide was not whether CW had consented to sex with others in the past, but whether she consented to have sex with Peite. We conclude that the evidence of CW's sexual advances, over a period of several years, toward some of the men she had met in a bar is not relevant, in itself, to establish that she consented to have sex with Peite. Similarly, her alleged sexual advances toward a man other than Peite at the Midway bar, which she left hours before her encounter with Peite, says virtually nothing about her willingness to engage in sex with Peite. *See State v. Williams,* 773 P.2d 1368 (Utah 1989) (exclusion of rape victim's consensual act of sexual intercourse earlier that night with another man not violative of defendant's constitutional rights); *State v. Jones,* 62 Haw. 572, 617 P.2d 1214 (1980) (evidence of victim's consensual intercourse two days before alleged rape not relevant to whether she consented to intercourse with defendant).

■ Peite submits that testimony showing CW once had sex with a bar patron in a restroom was evidence of a "public" sex act, not of CW's "private" sex life, and thus the interest in protecting a rape vic-

tim's privacy should not apply to override his right to present such evidence. *See Wood,* 957 F.2d at 1552; *Colbath,* 540 A.2d at 1216. However, we need not consider whether there were legitimate interests that would otherwise weigh against Peite's right to present the testimony at trial, because, as stated above, the testimony was irrelevant and Peite had no constitutional right to present it.

■ Peite further contends that the proffered fact that CW had made sexual advances toward men she met in bars and then left with them to engage in intercourse shows a "pattern of behavior" similar to the conduct at issue, and therefore was sufficiently probative on the issue of consent to constitutionally require its admission. We disagree. The admission of evidence of an alleged victim's past sexual behavior is constitutionally required only in extraordinary circumstances. *See Doe v. United States,* 666 F.2d 43, 47–48 (4th Cir. 1981); *State v. Williams,* 21 Ohio St.3d 33, 487 N.E.2d 560 (1986); *People v. Hackett,* 421 Mich. 338, 365 N.W.2d 120, 128 (1984). A defendant may well have a constitutional right to present evidence of a complainant's prior sexual behavior where such evidence shows a pattern of behavior that is *clearly similar* to the defendant's account of her actions at the time of the alleged offense. *See Government of Virgin Islands v. Jacobs,* 634 F.Supp. 933 (D.V.I.1986); *United States v. Kasto,* 584 F.2d 268, 271 n. 2 (8th Cir.1978), *cert. denied,* 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979). In this case, however, the prior behavior sought to be admitted bore little resemblance to CW's behavior on the night of the alleged rape, even as related by Peite. According to Peite's offer of proof, the witnesses would testify that CW was "always the instigator" of these encounters, and that she left the bars with men for the apparent purpose of having sex with them. Yet Peite did not offer to show that this was what occurred on the night of the alleged rape. Furthermore, the trial record is devoid of testimony indicating that CW made any sexual overtures toward Peite, or anyone else, during the hours she spent at the

**816**

Longhorn before leaving with Peite. To the contrary, the testimony indicated that CW left the bar with Peite because she had been "cut off" and wanted to go home, and that Peite had offered to drive her. CW's behavior on this occasion was clearly *different* from the prior behavior to which Peite's witnesses would have testified. We conclude that Peite has not shown that the proffered evidence of CW's prior sexual behavior was constitutionally required to be admitted. Accordingly, the district court's ruling to exclude the evidence is affirmed.

B. Admission of hearsay under "excited utterance" exception.

■ At trial, Peite objected to the admission of CW's out-of-court statements made to Harold Cornell—the person who picked her up from the side of the road after the alleged rape—describing what had happened to her that night. Peite argued that the statements lacked the requisite spontaneity, that they were merely responses to questions, and that they were inconsistent with CW's trial testimony. Overruling Peite's objection, the court allowed the evidence under the "excited utterance" exception to the rule against hearsay, I.R.E. 803(2).

Idaho Rule of Evidence 803(2) provides that the hearsay exclusionary rule does not apply to a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The admission of an "excited utterance" is left to the sound discretion of the trial court. *State v. Bingham*, 116 Idaho 415, 421, 776 P.2d 424, 430 (1989). Peite contends that the time CW spent on the highway was too long for her subsequent statements to be considered excited utterances. However, as our Supreme Court has noted, "[a] sexual assault is one of the most distressing experiences a person could have. The distress is likely to remain bottled up in the victim until she or he can talk about what happened." *Id., quoting State v. Parker*, 112 Idaho 1, 4, 730 P.2d 921, 924 (1986). Here, the challenged evidence consisted of the very first statements made by CW following the event. At the time the court ruled to admit the evidence as an excited utterance, the court had before it testimony that CW had been beaten, raped and threatened with death. CW testified that after escaping from Peite's car, she made her way to the interstate where Cornell picked her up 15 or 20 minutes later. Cornell testified that at the time he picked her up, CW appeared excited, scared and frightened. Upon this foundation, the court reasonably could conclude that CW was still under the stress of the events in Peite's car when Cornell stopped for her.

■ Peite also claims that the statements do not qualify as excited utterances because they were given in response to Cornell's questions. This position is simply without support: in *Bingham*, the statements admitted as excited utterances were made by the victim in response to questions from a police officer. 116 Idaho at 417, 776 P.2d at 426.

■ Finally, Peite argues that the court erred in admitting the statements because they were shown to be unreliable. He points to the statement by CW to Cornell that she had accepted a ride from Peite and left her car at the bar because she was too intoxicated to drive herself home. However, prior to Cornell's testimony, CW had testified that she rode with a friend to the bar leaving her own car at home. Peite argues that this subsequent, contradictory statement at trial had undermined the "special reliability" presumed of her statement, and therefore the excited utterance exception does not apply.

■ As Peite correctly observes, the rationale underlying the excited utterance exception derives from the special reliability generally regarded as furnished by the excitement suspending the declarant's powers of reflection and fabrication. *See State v. Burton*, 115 Idaho 1154, 1156, 772 P.2d 1248, 1250 (Ct.App.1989). However, the fact that CW's initial out-of-court statements conflicted in some respect with facts later testified by her does not necessarily show the statement to be a product of reflection and fabrication. The record be-

25

fore the trial court indicated that CW was intoxicated at the time of her remarks to Cornell, and the court could reasonably view her mistake to have been the product of a memory lapse brought on by CW's consumption of alcohol. Because the record contains sufficient circumstances from which the trial court could conclude that the requirements of the excited utterance exception had been satisfied, we find no abuse of discretion in the court's decision to admit the evidence.

## C. Victim's identification of defendant from photo lineup.

Peite next asserts that the district court committed prejudicial error when it admitted testimony from a deputy sheriff that CW had identified Peite in a photographic lineup. Peite objected to the testimony on the ground of relevance, as identity was never an issue at trial. He contends that this evidence "unfairly and improperly bolstered [CW's] testimony." Although Peite had not testified at the time the evidence was admitted, he had formally notified the state at a preliminary hearing that he admitted to having sex with CW on the night in question. Plainly, then, the deputy's testimony was not relevant to any issue contested at trial. However, Peite has not shown that the testimony was inaccurate or otherwise misled the jury. We are convinced beyond a reasonable doubt that the admission of a consistent statement by CW on the undisputed facts that Peite was the man who drove her from the Longhorn and had intercourse with her in the backseat of his car did not contribute to the verdict of the jury, where the sole issue before it was consent. Peite's substantial rights were not violated and the error was harmless. See I.C.R. 52; *State v. LePage*, 102 Idaho 387, 395, 630 P.2d 674, 682 (1981), *cert. denied*, 454 U.S. 1057, 102 S.Ct. 606, 70 L.Ed.2d 595 (1981); *State v. Brazzell*, 118 Idaho 431, 435, 797 P.2d 139, 143 (Ct.App.1990).

## D. Photographs taken of CW's injuries several days after the incident.

During trial the state introduced several photographs displaying bruises on CW's face and body. Most of the photographs were taken by the intake officer at the police station on January 27, 1990, the morning after the alleged rape. A few of the photographs were taken on February 1, six days after the incident. Peite objected to the admission of those photographs then, as he does now, on the basis of their remoteness, arguing the probative value of such photographs was outweighed by their prejudicial effect on the jury.

Evidence is admissible if it is relevant to a material issue of fact in the case. I.R.E. 402. However, the trial court has discretion to exclude relevant evidence upon a determination that its probative value is substantially outweighed by its potentially unfair prejudicial impact on the jury. I.R.E. 403; *State v. Enno*, 119 Idaho 392, 405–406, 807 P.2d 610, 623–24 (1991); *State v. Clark*, 115 Idaho 1056, 1059, 772 P.2d 263, 266 (Ct.App.1989). On appeal, the trial court's determination under I.R.E. 403 will not be disturbed unless it represents an abuse of discretion. *Enno*, 119 Idaho at 406, 807 P.2d at 624.

Evidence of physical injury is not necessary to establish the use of force in a rape prosecution. It is relevant here, however, where it tends to corroborate the complaining witness's version of the events surrounding the alleged rape and to contradict the defendant's claim of consent. The existence of physical bruises was clearly relevant to the critical factual issue to be decided by the jury: whether CW was telling the truth about her brutal beating and subsequent rape by Peite, or whether the jury ought to believe Peite's account that, on the evening in question, the two engaged in a consensual act of sexual intercourse. Peite submits, however, that the photographs were inadmissible absent an affirmative showing that he was the sole source of the bruising, to the exclusion of other possible causes. We disagree.

Clearly, the state is not required to exclude all possible sources of an injury before introducing evidence that the accused inflicted it upon the victim. Indeed, conclusive evidence of the causation of injuries to

victims is often impossible to produce. Moreover, the state in this case did produce *direct* evidence of causation, consisting of CW's testimony that the injuries depicted in the photographs were received at the hands of Peite.

██ With respect to the second set of photographs, Peite claims that the six-day lapse between the time of the incident and the time they were taken rendered those photographs so remote that any probative value would be outweighed by their tendency to prejudice the jury against him. However, the state presented medical testimony that, in the case of a deep bruise, the discoloration would not come to the surface for several days. Again, CW testified that the bruises were the result of her beating by Peite. Additionally, one of CW's neighbor's testified that in the days following the alleged rape, CW's bruises became darker and more visible.

Based upon the record before the trial court, we conclude that there was a sufficient showing from which the judge could reasonably conclude that the probative value of the photographs exceeded their prejudicial effect. Finding no abuse in the court's exercise of discretion, we uphold the ruling to admit the evidence.

E. Shirt found at the side of the road.

Peite also argues the trial judge erred in admitting the shirt purportedly lost by CW the night of the alleged rape. However, no timely objection to such evidence appears in the record, as required by I.R.E. 103(a)(1). Nor has Peite shown the admission of the evidence to constitute plain error. I.R.E. 103(d). Thus, we will not address this alleged error on appeal.

F. Order of evidence presented by the state.

██ Peite next submits that the order in which the court allowed the state to present its case was inappropriate. More specifically, he contends that the court im-

properly admitted evidence before the state had introduced the requisite evidentiary foundation. We note that the order of trial and the presentation of evidence is within the sound discretion of the trial court. *State v. Smoot*, 99 Idaho 855, 862, 590 P.2d 1001, 1008 (1978). Error may not be predicated on variation in the absence of showing prejudice. *Id.*

██ Here, Peite seeks to establish prejudice primarily relying on the statements of the trial judge in connection with the admission of the photographs showing CW's bruises. At the time the photographs were initially introduced, CW had not testified about the rape. Outside the presence of the jury, Peite objected to the photographs on the ground that the state had not yet presented any evidence showing the bruises were caused by Peite, and he requested a limiting instruction that the photographs be considered solely for the purpose of showing CW's condition on the date the photographs were taken. Consistent with I.R.E. 104(b)[2], the court admitted the photographs subject to a motion to strike if the state failed to later connect it up with CW's testimony. When the jury returned, the court gave the instruction requested by Peite. Later, after CW testified that Peite had beaten and raped her and that the bruises depicted in the photographs were caused by him, the state asked the court to instruct the jury to "consider [the bruises depicted in the photographs] as being caused by Mr. Peite." Peite objected, and, after a discussion outside the presence of the jury, the court granted the state's request and instructed the jury as follows:

> Members of the jury, I have admitted into evidence without limitation a series of photographs.... Previously they had been admitted subject to conditions or limitations. They are now admitted without limitations.

Peite argues, as he did at trial, that this instruction constituted an improper com-

---

**2.** Idaho Evidence Rule 104(b) provides that, "[w]henever the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or in the court's discretion subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

ment on the evidence and indicated "the court's opinion on a critical portion of the evidence." He further asserts that the instruction unfairly emphasized the state's evidence and "was trapped by the procedure of the Prosecuting Attorney." We disagree, finding the court's instruction on the admissibility of the photographs entirely neutral.[3] Moreover, the asserted emphasis occasioned by the objected-to instruction became necessary only as a result of the court's previous limiting instruction *requested by Peite.* Peite has failed to show any error occurring in the manner in which the court admitted the photographs.

■ Peite also argues that the court erred when it permitted testimony by a prosecution witness who had been present in the courtroom in violation of an exclusion order. The decision to permit an exception to or variations from an exclusion order lies within the trial court's discretion. *State v. Danson,* 113 Idaho 746, 748, 747 P.2d 768, 770 (Ct.App.1987). Absent a showing of prejudice, no abuse of discretion will be found. *Id.* When the matter came up at Peite's trial, Peite informed the court he would not claim prejudice by the witness's prior exposure in the courtroom. He has shown no prejudice on appeal. Accordingly, we find no abuse of discretion.

Peite also claims that the prosecutor's attempt to elicit testimony from a third witness without first laying the requisite foundation twice caused him to make objections, thereby putting the defense in the light of an obstructionist before the jury. However, Peite's objections were sustained, and we simply fail to see any error on the part of the court.

## IV. PROSECUTORIAL MISCONDUCT

We turn next to Peite's allegations of prosecutorial misconduct. We first consid-

er Peite's contentions concerning the improper questioning of witnesses at trial. Then we will address the alleged improprieties occurring during the state's closing arguments.

### A. Misconduct in the examination of witnesses.

#### 1. Improper questioning of the victim.

■ During his redirect examination of CW, the prosecutor asked her, "What's been the hardest part of the whole thing, [CW]?" Although the court sustained Peite's objection and no answer was given, Peite claims that the prosecutor's question constituted misconduct requiring the reversal of his conviction. Peite argues that the question sought testimony which clearly was irrelevant to any legitimate fact in the case and that it was posed for the improper purpose of gaining sympathy for CW from the jury. We agree that the question was improper,[4] and the court correctly sustained Peite's objection. However, we are not persuaded that the question was prejudicial to Peite. At the most, the question suggested to the jury that the ordeal had been "hard" for CW. Given that CW had just testified she had been abducted, choked, beaten, raped, and threatened with the loss of her life and the lives of her children, we do not see how a subsequent question implying that these events had been "hard" for her could further influence the jury.

#### 2. Improper questioning of the state's investigating officer.

■ Peite also alleges misconduct in the state's question to Deputy Sheriff Weetman, the officer assigned to investi-

---

**3.** Additionally, the court instructed the jury at the onset of trial that, "No statement, ruling, remark or comment which I may make during the course of this trial is intended to indicate my opinion as to how you should decide the case or to influence you in any way in your determination of the facts."

**4.** "A prosecutor should not knowingly and for the purpose of bringing inadmissible matter to the attention of the judge or jury offer inadmis-

sible evidence, ask legally objectionable questions, or make other impermissible comments or arguments in the presence of the jury." ABA STANDARDS FOR CRIMINAL JUSTICE: THE PROSECUTION FUNCTION, STANDARD 3-5.5(b) (1992). This has been a formal standard of the ABA since 1971. *See* ABA STANDARDS, THE PROSECUTION FUNCTION § 5.6(B) (1971).

gate the case and who signed the complaint against Peite. The prosecutor asked Weetman whether he personally believed CW had been raped. Peite objected before the question was answered and then moved for a mistrial. The court sustained the objection but refused to grant a mistrial and instead promptly instructed the jury to disregard the question. Peite nonetheless asserts that the prosecutor's question was an attempt to improperly interject the state's opinion on the issue of guilt and that the trial court's refusal to grant a mistrial constituted reversible error.

A review of the trial transcript reveals that, over the state's objections, the defense had engaged in a line of inquiry with this witness which suggested to the jury that Officer Weetman only reluctantly filed the complaint against Peite in response to outside pressure and the insistence of the prosecutor. Under these circumstances, the question posed by the prosecutor can be viewed as an attempt to rebut the inferences raised by the defense that the complaint was invalid, rather than an intentional venture to introduce the opinion of the state. Even if the question was improper, any prejudicial effect it might possibly have had on the jury was cured by the court's prompt and clear instruction that the jury disregard it:

> I am now going to tell you that I want you to disregard [the prosecutor's question] from your minds, that that question was ever asked. I don't even want you to speculate on what his answer would be. We are going to proceed on the basis that the question was never asked. It is not relevant to these proceedings what that witness believes regarding someone else's credibility, not what the prosecutor or any other party to this action believes as to the credibility of another. That is your sole and exclusive function.

Because we find no reversible error to have occurred, we uphold the court's denial of the motion for mistrial. *See State v. Owens*, 101 Idaho 632, 639, 619 P.2d 787, 794 (1980).

**B. Misconduct in closing argument.**

Peite also accuses the prosecutor of misconduct in the state's closing arguments, including an improper reference to excluded evidence, serious misstatements of the law and evidence, and disparaging comments directed at defense counsel. In addressing these allegations, we recognize that counsel for both sides traditionally have been afforded considerable latitude in their arguments and have the right to discuss fully, from their respective standpoints, the evidence and the inferences and deductions arising therefrom. *State v. Pizzuto*, 119 Idaho 742, 752, 810 P.2d 680, 690 (1991), *cert. denied*, — U.S. ——, 112 S.Ct. 1268, 117 L.Ed.2d 495 (1992). The role of the public prosecutor is to present the government's case earnestly and vigorously, using every legitimate means to bring about a conviction, but also to see that justice is done and that every criminal defendant is accorded a fair trial. *State v. Reynolds*, 120 Idaho 445, 449, 816 P.2d 1002, 1006 (Ct.App.1991); *State v. Robinson*, 115 Idaho 800, 807, 770 P.2d 809, 816 (Ct.App.1989).

> Although we have recognized the imposition of certain well-accepted restrictions beyond which the prosecutor's argument may not go without running afoul of its function, the propriety of a given argument will depend largely on the facts of each case. The purpose of the prosecutor's closing argument, not unlike that of the defense in this regard, is to enlighten the jury and to help the jurors remember and interpret the evidence. Thus, the prosecution may discuss the evidence, pointing out discrepancies and conflicts in the testimony, and argue that the evidence in the record supports and justifies a conviction. We note that counsel also may make remarks, not based on the record, which concern matters of general knowledge or experience.

*Reynolds*, 120 Idaho at 449–50, 816 P.2d at 1006–07 (footnote omitted).

The function of appellate review is not to discipline the prosecutor for misconduct, but to insure that any such misconduct did not interfere with the de-

fendant's right to a fair trial. *Id.*, 120 Idaho at 451, 816 P.2d at 1008. Thus, even if the prosecutor's conduct exceeds the permissible bounds of argument, such conduct will not require reversal of the conviction if it is deemed harmless error. I.C.R. 52. Error will be deemed harmless if the appellate court is convinced beyond a reasonable doubt that the jury would have reached the same result had the misconduct not occurred. *LePage*, 102 Idaho at 393, 630 P.2d at 680; *Reynolds*, 120 Idaho at 451, 816 P.2d at 1008.

### 1. Mischaracterization of the evidence.

■ Peite claims that the prosecutor misrepresented the evidence when arguing to the jury that police captain Jim West had discredited Peite's testimony:

> [I]f Mr. Peite was so honest, and just so forthright and everything about this, why did he testify that he was so cooperative, but yet Jim West gets up here and makes him out to be an absolute liar. Or is Jim a liar, too?

Overruling Peite's objection, the trial court concluded that the remark was a fair comment on the evidence. We agree. Peite earlier testified he had been cooperative with the police throughout their investigation. In rebuttal, the state presented the testimony of Captain West, who informed the jury that Peite initially had refused to allow the officers to photograph him or to submit to a physical examination. Thus, Captain West's testimony did tend to contradict Peite's. While this apparent contradiction did not necessarily mean that one of the witnesses was a "liar," it arguably showed that Peite had not been entirely truthful with the jury. We conclude that the remark did not exceed the bounds of permissible argument, and that the trial court properly overruled the objection.

■ Peite further complains that the prosecutor argued facts beyond the record and distorted and misstated the evidence, citing two instances. The first involved the prosecutor's characterization of the events giving rise to CW leaving the Longhorn with Peite. The prosecutor listed four witnesses as having testified that Peite want-

ed CW expelled from the bar and that he subsequently intervened when another man offered to drive her home:

> [Counsel for Peite] has failed to try to even begin to explain to you how Linda Travis, and Mrs. Tesky, and Darik Fuechsel, and John Potts were so wrong when they told you that, yeah, Mr. Peite wanted [CW] out of there, and he was praying [sic] for her. He stood in the way, and ran Darik Fuechsel off so he could get—

Peite objected to the statement on the ground that the prosecutor was arguing facts not supported by the record. The objection was overruled. We note that, to the extent the remark named Linda Travis and John Potts, it was inaccurate. As the trial transcript reveals, only Tesky, the bartender, testified that Peite had asked to have CW removed from their table. Darik Fuechsel testified that he had offered to take CW home. The two other named witnesses did not testify as represented by the prosecutor, and clearly the prosecutor should not have indicated to the jury that they had. Notwithstanding the prosecutor's assignment of the testimony to the wrong witnesses, the *facts* argued in his remark can be fairly inferred from the testimony of Tesky and Fuechsel, and hence we conclude that the argument did not exceed the scope of the evidence adduced at trial. Accordingly, we conclude that the trial court did not err when it overruled Peite's objection.

■ Peite also assigns as error several prosecutorial remarks to which he did not object at trial. Preliminarily, we note that in the absence of a timely objection to an alleged error at trial, an appellate court generally will not consider the alleged error on appeal. *State v. LaMere*, 103 Idaho 839, 844, 655 P.2d 46, 51 (1982); *Reynolds*, 120 Idaho at 451, 816 P.2d at 1008. In a criminal case, however, we temper the failure to timely preserve an issue by the doctrine of fundamental error. When this standard is applied to prosecutorial argument, the error is "fundamental" only if the comments were so egregious or inflammatory that any prejudice arising therefrom could not have been remedied by a

ruling from the trial court informing the jury that the comments should be disregarded. *State v. Smith,* 117 Idaho 891, 898, 792 P.2d 916, 923 (1990).

### 2. *Reference to excluded evidence.*

■ Peite alleges misconduct in the prosecutor's reference to scientific evidence, ruled inadmissible by the court, showing that hair samples found in Peite's car matched those of CW, and that sperm was found on CW's jeans. Peite did not object to the comment at trial but now contends that the statement unfairly prejudiced his right to a fair trial and constituted fundamental error. We are not persuaded. Peite admitted to having intercourse with CW at the time and place in question, and thus the prosecutor's remark, even if improperly made, had no bearing on the only contested issue in the case—consent. Consequently, Peite can show no prejudice. Because the alleged error does not rise to the level of fundamental error, it will not be considered further on appeal.

### 3. *Need to find a "conspiracy."*

■ Peite also claims as misconduct the prosecutor's statement to the jurors that, in order to accept Peite's testimony as true, they would "have to conclude" that the man who picked CW up at the roadside, CW, and some of the state's other witnesses "have just formed some sort of conspiracy to frame and convict Mr. Peite." Although Peite raised no objection below, he contends on appeal that the prosecutor's remark misstated the law and could have misled the jury to believe that it could not acquit without first finding such a conspiracy. However, we conclude that the error, if error at all, was one which could have been remedied by a timely objection and an appropriate instruction to correct the misstatement.

### 4. *Disparagement of defense counsel.*

■ Following defense counsel's closing argument to the jury, the prosecutor gave a final summation which began with the following comments:

I'd suggest to you that you should just summarily reject [defense counsel's] argument. His analysis fails to take account of what it's like to be a human being, fails to take account of the human feelings, fails to take account of the evidence. And it's exactly the sort of defense I would expect from a rapist.

Peite asserts that this comment was a disparagement of defense counsel. We disagree. Immediately prior to the state's final summation, defense counsel urged the jury to believe his client's account of the events over those related by CW. Counsel argued that CW had invented a story of rape, possibly because she felt insulted and angered by Peite's refusal go home with her and his ultimatum that she tell where she lived or get out of his car. It is clear, however, that counsel's arguments derived from the version of events testified to by Peite, who, in fact, did stand before the jury accused of being a rapist. Taken in the context in which it was made, the prosecutor's remark that "this was the sort of defense I would expect from a rapist," was a comment on *Piete's* character and his motive for lying, and not an attack on the character of his attorney. We find no error to have occurred.

## V. CUMULATIVE ERROR

■ Peite asserts that the errors occurring at trial require reversal under the cumulative error doctrine. This doctrine refers to an accumulation of irregularities, each of which by itself might be harmless, but when aggregated, the errors show the absence of a fair trial, in contravention of the defendant's constitutional right to due process. *Pizzuto,* 119 Idaho at 764, 810 P.2d at 702. However, the right to due process does not guarantee a defendant an error-free trial, but a fair one. *Bruton v. United States,* 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968); *Enno,* 119 Idaho at 408, 807 P.2d at 624. After carefully reviewing the record in light of Peite's contentions of impropriety, we are not persuaded that he was denied a fair trial.

## VI. SUFFICIENCY OF THE EVIDENCE

 Finally, Peite contends the evidence was insufficient to support the verdict of the jury and that his conviction must be reversed. A conviction will not be set aside where there is substantial evidence upon which any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 309, 99 S.Ct. 2781, 2783–84, 61 L.Ed.2d 560 (1979); *State v. Bolton*, 119 Idaho 846, 851, 810 P.2d 1132 (Ct.App.1991). On appeal, we construe all facts, and inferences to be drawn from those facts, in favor of upholding the jury's verdict. *State v. Aragon*, 107 Idaho 358, 366, 690 P.2d 293, 301 (1984). Where there is competent although conflicting evidence to sustain the verdict, we will not reweigh the evidence or disturb the verdict. *State v. Cotton*, 100 Idaho 573, 575, 602 P.2d 71, 73 (1979).

 Peite submits that the jury would have had to believe CW's version of the incident in order to find him guilty. He argues that CW's testimony was not credible and that the jury should have rejected it and believed his account instead. As stated above, we will not substitute our judgment for that of the jury as to the credibility of witnesses, the weight of their testimony, or the inferences that reasonably may be drawn from them. Having reviewed the record before us, we conclude there was substantial evidence, albeit conflicting, from which the jury could reasonably find Peite guilty of rape.

## CONCLUSION

The judgment of conviction, and the orders denying Peite's post-trial motions for acquittal and new trial, are affirmed.

SWANSTROM and SILAK, JJ., concur.